Lee Anthony EDDY, Appellant,

v.

STATE of Indiana, Appellee.

No. 684S258.

Supreme Court of Indiana.

Aug. 1, 1986.

Michael A. Dvorak, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Lee Anthony Eddy was tried before a jury and convicted of felony-murder, Ind.Code § 35–42–1–1(2) (Burns 1979 Repl.), and of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). The trial court imposed consecutive terms of forty years and ten years, respectively.

We address the following three issues in this direct appeal:

(1) Whether the trial court abused its discretion by admitting allegedly gruesome photographs of the victim;

(2) Whether the trial court erroneously refused appellant's tendered instruction that a felony-murder charge requires that the homicide occur within the *res gestae* of the underlying robbery, and,

(3) Whether appellant may be sentenced for both felony-murder and the underlying felony.

The evidence favorable to the trial court's judgment showed that in the early morning hours of August 7, 1983, Gregory White and Peter Davis were sitting on a wall which bordered a river at Leeper Park in South Bend. Johnny Hunt and appellant approached and stood directly behind them. After a brief conversation, Hunt, armed with a gun, demanded money from White and Davis. Hunt placed the gun against Davis' head, told him to lie on the ground face down, and then took his money. Meanwhile, White gave his wallet to appel-

lant and was pushed into the river. White then heard a gunshot. After White was sure the robbers had left, he climbed up onto the wall to discover his friend's body lying in a pool of blood.

During the investigation of the crime, appellant told Officer John T. Brassell that he owned the gun used to kill Davis and informed the officer where to find it. Brassell recovered the gun at the house of appellant's father. Appellant's former girl-friend, Laura O'Hara, identified State's exhibit four as defendant's gun.

In appellant's presence, Hunt admitted to an acquaintance that they had just shot a man at Leeper Park. Eddy had no response to his companion's declaration. Later, appellant admitted to O'Hara that they shot the decedent to get money to purchase liquor.

Dr. Lee Lehman, a pathologist, testified that the nature of the wound indicated that the gun was pressed against the back of decedent's head when it was fired. He determined that the bullet caused instantaneous death.

### I. Gruesome Photographs

Appellant argues that the trial court erred by permitting the admission of allegedly gruesome photographs of the victim's body at the crime scene and at the morgue. He maintains the trial court abused its discretion because any relevancy of the photographs was outweighed by its prejudicial impact on the jury.

Defendant objected to the admission of State's Exhibit 21 (a photograph of decedent's left hand which was splattered with blood), Exhibit 22 (a photograph of decedent's body lying on the autopsy table), Exhibit 25 (a crime scene photograph of decedent's body lying in a pool of blood), Exhibit 26 (a crime scene photograph of decedent's upper body lying in a pool of blood), and Exhibit 31 (an x-ray of the decedent's brain or skull).

The pathologist identified Exhibit 21 as decedent's left hand. His examination of the hand revealed blood splatter marks on the back of the hand which indicated the

hand was positioned on the back of the decedent's head when the gun was fired.

Exhibit 22 was identified by decedent's mother as a photograph of her son. The pathologist also identified this exhibit as a photograph of the Peter Davis who was the subject of the autopsy which he performed.

Morris Degeyter, the investigating officer, found Peter Davis' body at Leeper Park. He identified Exhibit 25 as the photograph of the body he found and Exhibit 26 as the upper portion of the body. White also identified Exhibit 25 as a photograph which depicted Davis' condition on August 7, 1983, after the assailants fled. The mother also identified Exhibit 26 as a photograph of her son.

The pathologist identified Exhibit 31 as an x-ray of the decedent's head, which indicated a bullet was located in the center of the victim's brain or skull. The pathologist referred to all exhibits, except the crime scene photographs, when he testified about the procedures used during the autopsy and explained how he determined the cause of death.

■■■ The decision to admit photographic evidence lies within the trial court's discretion and will be reversed only upon a showing that this discretion has been abused. *Douglas v. State* (1984), Ind., 464 N.E.2d 318. Autopsy photographs which depict the nature and extent of the decedent's wounds immediately following the murder are not rendered inadmissible solely on the bases of gruesomeness and repetition. *Akins v. State* (1981), Ind., 429 N.E.2d 232. Generally, a photograph is relevant and admissible if it depicts an object or scene which a witness would be permitted to describe through testimony. The potential that passions may be aroused by the gruesomeness of the photograph is not sufficient grounds for exclusion if the photograph is material and relevant. The trial court has abused its discretion only if there is a clear showing of imbalance between relevancy and tendency to inflame the passions of the jury due to the gruesomeness of the photographs admitted.

*Askew v. State* (1982), Ind., 439 N.E.2d 1350.

■■■ Autopsy photographs relevant to a pathologist's explanations and findings regarding how he determined the cause of death are properly admitted. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228. The autopsy photographs contained in Exhibits 22 and 31 were thus properly admitted. Exhibits 21, 25, and 26 were properly admitted as photographs of the crime scene depicting the body of the victim at the time of discovery. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. In sum, the law does not require the result of defendant's acts to be sanitized when evidence of the crime is submitted to the jury. *Seltzer v. State* (1986), Ind., 489 N.E.2d 939.

## II. Instructions

Appellant argues the trial court erred by refusing his tendered instructions numbered three and five:

### Number Three

If you find the evidence does not support, beyond a reasonable doubt, a verdict of guilty as to the offense of Felony-Murder, but you do find the evidence supports, beyond a reasonable doubt, a verdict of guilty as to the offense of Robbery, a Class B felony, then you may acquit the defendant of the offense of Felony-Murder and find him guilty of the offense of Robbery, a Class B felony if you find, from the evidence, at the time the decedent was killed this homicide was not in perpetration of a robbery.

### Number Five

If the robbery has been completed and terminated prior to the killing, then the robbery may not be used to find the Defendant guilty of the charge of felony-murder. If the homicide was not committed within the *res gestae* of the robbery it is not committed in the perpetra-

tion of the robbery. The term *res gestae* requires that the felony and homicide be part of a continuous transaction, that the homicide be incident to the felony, or that there be no break in the chain of events between the robbery and the homicide. A break in the chain of events has occurred if the robber has won his way even momentarily to a place of temporary safety.

He maintains that these instructions would have correctly charged the jury that he could not be found guilty of felony-murder unless the homicide was committed within the *res gestae* of robbery. Appellant claims that the robbery was completed before the homicide and thus the homicide did not occur during the commission of the robbery. He contends that a robbery which is completed before the homicide may not be used as the underlying felony for a felony-murder charge.

■■■ To determine whether error resulted from the refusal of a tendered instruction, this Court examines whether: (1) the tendered instruction correctly states the law, (2) evidence in the record supports the instruction, and (3) the substance of the tendered instruction is covered by other instructions given. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836. In addition, the trial court may refuse an instruction which has the tendency to mislead or confuse the jury. *Harding v. State* (1984), Ind., 457 N.E.2d 1098. We find that appellant's tendered instructions could have misled the jury because the instructions presented only a partial statement of the law.

The offense of felony-murder proscribes homicides which occur during the commission of certain felonies.[1] Appellant construes temporally the statutory phrase, "kills another human being *while committing ... robbery*" (emphasis added) as requiring the commission of the homicide be-

1. Under Indiana law, a person who "kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony." Ind.Code § 35-42-1-1(2) (Burns 1979 Repl.).

fore all the statutory elements of robbery[2] have been completed. This Court has long declined to define the phrase, "while committing", in terms of the chronological completion of the statutory elements of the underlying felony. To require that the murder occur before each of the statutory elements of the robbery have been completed would elevate form over substance. The felony murder statute must be construed in light of its purpose:

> If [a technical] construction were to be given to the statute, it would be quite impracticable to ever convict for a murder committed in the perpetration of any of the felonies mentioned in this section. The intention of the legislature, in enacting the section, was, doubtless, to class certain homicides in the highest degree of murder without containing the ingredient of premeditation, malice, or intention.... *Bissot v. State* (1876), 53 Ind. 408, 412.

 The determination whether the homicide occurred "during" commission of the underlying felony of robbery is governed by the concepts of asportation and continuous transaction. A robbery is not complete until there is an asportation of the property. *Stroud v. State* (1979), 272 Ind. 12, 395 N.E.2d 770. Moreover, a homicide committed within the *res gestae* of the felony charged is committed in the commission or perpetration of a felony. *Averhart v. State* (1984), Ind., 470 N.E.2d 666. A crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction. *Neal v. State* (1938), 214 Ind. 328, 14 N.E.2d 590. A homicide and robbery are deemed to be one continuous transaction when they are closely connected in time, place, and continuity of action. *Thompson v. State* (1982), Ind., 441 N.E.2d 192.

 The tendered instructions are an incomplete statement of the law and thus could have misled or confused the jury.

The instructions did not make it clear that the jury must also consider the concepts of asportation and continuous transaction. In the case at bar, the facts indicate that appellant forcibly removed White's wallet before the homicide of Davis, but prior to the asportation of this property. The homicide and robbery were one continuous transaction. The trial court properly refused appellant's tendered instructions.

 Eddy further argues that it is a jury determination whether the homicide occurred during the perpetration of the underlying felony. He claims the judge usurped the jury's role by not presenting the issue to the jury. The jury was instructed that a person who kills another human being while attempting or committing robbery commits felony-murder. The jury determined this issue when it rendered its verdict of guilty for felony-murder. Appellant's tendered instructions expanded on the meaning of the statutory phrase, "while committing." Even without this more specific definition the jury still was in the posture of determining whether the homicide occurred during the perpetration of the underlying felony.

### III. Sentencing Error

The jury returned verdicts of guilty for the charges of felony-murder and robbery. The information for felony-murder alleged a murder during commission of robbery:

> Lee Anthony Eddy ... [knowingly committed] the crime of Robbery by threatening the use of force on Greg White, to wit: by placing a metal object to the neck of the said Greg White, the said Lee Anthony Eddy did take property, to wit: a wallet and personal possessions from the person of the said Greg White ...

The information for robbery alleged the same facts:

> Lee Anthony Eddy did knowingly and while armed with a deadly weapon, to wit: a metal object and by putting Greg

---

**2.** Robbery, a class B felony, is committed when "a person... knowingly or intentionally takes property from another person or from the presence of another person by using or threatening

the use of force on any person or by putting any person in fear...and is committed while armed with a deadly weapon." Ind.Code § 35–42–5–1 (Burns 1979 Repl.).

White in fear, take property, to wit: a billfold and other personal possessions from the person of the said Greg White.

When convictions for both felony-murder and the accompanying felony of robbery are obtained, the defendant may only be sentenced for the greater charge. This Court has consistently held that when a felony-murder results from a killing in the commission of a robbery, the robbery is a lesser included offense of the felony-murder which merges into the felony-murder conviction. *Collier v. State* (1984), Ind., 470 N.E.2d 1340; *Coleman v. State* (1984), Ind., 465 N.E.2d 1130; *Williams v. State* (1981), Ind., 426 N.E.2d 662; *Sims v. State* (1977) 267 Ind. 215, 368 N.E.2d 1352; *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233.

We remand this cause to the trial court with instruction to vacate the conviction and sentence imposed for the separate robbery count. In all other respects, the judgment is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.