**Daniel C. ROOSE, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9202–CR–60.**

Court of Appeals of Indiana,
Second District.

Feb. 11, 1993.

Transfer Denied April 6, 1993.

William F. Thompson, Indianapolis, for appellant.

---

Linley E. Pearson, Atty. Gen. of Indiana and Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

## CASE SUMMARY

FRIEDLANDER, Judge.

Appellant-defendant Daniel C. Roose (Roose) appeals his convictions for criminal mischief,[1] a class D felony and cruelty to an animal,[2] a class A misdemeanor, claiming that the trial court erred in admitting photographs of the injured animal into evidence, and that the evidence was insufficient to support the convictions.

We affirm.

## FACTS

Cameron and Sally Wright [collectively referred to as the Wrights] are the owners of Tramp, a mixed breed dog. The Wrights kept Tramp either in their Indianapolis home or tethered in the backyard.

On February 20, 1991, Roose, a neighbor of the Wrights, complained to them that he found dog feces in his driveway. Several months later, Cameron Wright discovered that Tramp's dog house was moved to the rear of the backyard, and the stake and cable used to tether Tramp had been placed on top of the dog house. Roose told Teresa Martin (Martin), a neighbor, that he threw the dog house because he was tired of "smelling dog shit." *Record* at 688. Roose then told Martin that he was going to "get even with it" and was going to poison Tramp.

On the afternoon of May 3, 1991, Cameron Wright tethered Tramp to a stake in the backyard and left to play golf. Shortly thereafter, Al Peoples (Peoples), a neighbor, saw a dog attached to the bumper of a pick-up truck. The truck was traveling nearly fifty miles per hour dragging the dog behind it. Peoples chased the truck and watched it swerve from side to side as it ultimately landed in a ditch. Peoples also observed a trail of blood behind where the truck had driven. Peoples' wife called the police, and when Indianapolis animal control officer Chris Rinearson (Rinearson) arrived at the scene, Peoples told him that Roose was the driver of the truck.

Pete Harris (Harris), another neighbor who witnessed the incident, stated that when he waved at the driver and attempted to alert him that the dog was tied to the bumper, the driver looked at Harris and shrugged his shoulders.

When Sally Wright returned home, she discovered that Tramp was missing. Moments later, Tramp appeared at the front door and Sally Wright noticed that the dog was seriously injured. She drove Tramp to a veterinarian and Dr. Sandy Norman (Norman) examined and treated the dog. Tramp was covered with dirt and gravel with dead, blackened skin covering nearly half of his body, while the pads on Tramp's paws were torn and raw. Norman observed that Tramp's injuries were consistent with those caused from being dragged by a vehicle. The veterinary bills totaled approximately $6,500.

On May 4, 1991, Indianapolis police officer Frank Robbins (Robbins) advised Roose that he was accused of dragging an animal on the back of his pickup truck. Roose responded that he did not remember what had occurred because he was drunk, and that he was sorry if he had done anything like that.

Roose was charged with criminal mischief and cruelty to animals. Following a jury trial on September 13, 1991, he was convicted of both counts.

## ISSUES

1. Did the trial court err in admitting photographs of Tramp into evidence which depicted the animal's injuries?

2. Was the evidence sufficient to support the convictions?

## DECISION

*ISSUE ONE*—Did the trial court err in admitting photographs of Tramp into evidence which depicted his injuries?

---

1. Ind.Code 35–43–1–2 (1991 Supp.).

2. Ind.Code 35–46–3–12 (1988).

*PARTIES' CONTENTIONS*—Roose argues that the trial judge abused his discretion when he admitted photographs of Tramp in an injured condition into evidence because they tended to inflame and impassion the jury against Roose. The State responds that the photographs were relevant because they portrayed Tramp's injuries, and they assisted the jury in understanding the treating veterinarian's testimony at trial.

*CONCLUSION*—The photographs were properly admitted into evidence.

■■■ This issue is not a novel one in Indiana. Our supreme court has determined that admitting photographs into evidence rests with the trial court's discretion, and the court's ruling will not be disturbed absent an abuse of discretion. *Green v. State* (1992), Ind., 587 N.E.2d 1314; *Kennedy v. State* (1991), Ind., 578 N.E.2d 633, cert. denied —— U.S. ——, 112 S.Ct. 1299, 117 L.Ed.2d 521. A photograph is generally admissible if it assists the jury in understanding witness testimony. *Eddy v. State* (1986), Ind., 496 N.E.2d 24. The gruesomeness of a photograph is not a sufficient ground for exclusion if the photograph is material and relevant. *Green, supra; Fozzard v. State* (1988), Ind., 518 N.E.2d 789.

■ At trial, Chris Smith, a neighbor of the Wright's, identified two photographs of Tramp and testified that they depicted the dog's condition when he was dragged down the street. *Record* at 465. Cameron Wright testified that several photographs accurately represented Tramp in his injured condition after the incident. *Record* at 647–52. Rosemary Evans, a veterinary assistant who treated Tramp, identified several pictures depicting the dog's body after it was washed with an antiseptic. *Record* at 825–26.

Although some of the photographs were gruesome, they clearly aided the jury in understanding the nature of Tramp's injuries as well as the veterinarian's testimony regarding the medical attention that Tramp received. These photos were not merely cumulative inasmuch as they depicted different aspects of Tramp's injuries and treatment.

The trial court did not err in admitting the photographs into evidence.

*ISSUE TWO*—Was the evidence sufficient to support the convictions?

*PARTIES' CONTENTIONS*—Roose contends that the evidence was insufficient to infer the existence of identity, recklessness or knowledge as to the charged offenses. The State responds that the evidence was sufficient.

*CONCLUSION*—The evidence was sufficient.

The crime of cruelty to an animal is proscribed by I.C. 35–46–3–12 which provides in relevant part that:

"A person who *knowingly* or *intentionally:*

(1) tortures, beats, or mutilates a vertebrate animal resulting in serious injury or death to the animal ...

commits cruelty to an animal, a Class A misdemeanor."

(Emphasis supplied). I.C. 35–43–1–2(a) defines criminal mischief as follows:

"A person who:

(1) *recklessly, knowingly or intentionally* damages or defaces property of another person without the other person's consent; ... commits criminal mischief, a Class B misdemeanor. However, the offense is:

·   ·   ·   ·   ·

(B) *a Class D felony if:*

(i) *the pecuniary loss is at least two thousand five hundred dollars ($2,500)....*"

(Emphasis supplied).

■ While Roose asserts that there is no evidence demonstrating that he was the driver of the truck, the record reflects otherwise. Two witnesses testified that they were familiar with the color and unique design of Roose's truck, and Peoples testified that the truck owned by Roose was the one dragging Tramp down the street. *Record* at 319, 343, 936–40, 943. Rinearson and Guy Hammons, animal control officers, testified that Peoples told them that Roose

was the driver.[3] This was sufficient identi-fication evidence.

■ We also reject Roose's argument that the State did not sufficiently prove the element of "recklessness"[4] as to the charge of criminal mischief, and the element of "knowingly"[5] within the charge of cruelty to an animal. The element of intent may be proven solely by circumstantial evidence, and knowledge and intent may be inferred from the facts and circumstances of each case. *Mitchell v. State* (1990), Ind., 557 N.E.2d 660; *Stanley v. State* (1988), Ind., 531 N.E.2d 484.

■ At trial, several people witnessed the incident. They chased the truck and yelled at Roose to stop. Roose merely ignored these warnings. *Record* at 65, 155, 324, 436. Harris, who was standing outside his residence, waved his arms at Roose and yelled, "You've got your dog tied to your bumper." *Record* at 447. Roose merely looked at Harris and shrugged his shoulders. *Record* at 447.

From the evidence presented, the State presented sufficient evidence to prove Roose's intent. The jury could reasonably infer that Roose knowingly and intentionally harmed Tramp.

Judgment affirmed.

SHIELDS and HOFFMAN, JJ., concur.

---

**3.** While Roose argues that the testimony of Hammons and Rinearson regarding Peoples' identification of him as the driver constituted inadmissible hearsay, we observe that the testimony was admitted without objection. In *Banks v. State* (1991), Ind., 567 N.E.2d 1126, our supreme court determined that inadmissible hearsay evidence may be considered for substantive purposes and it is sufficient to establish a material fact in issue when the hearsay evidence is admitted without timely objection.

**4.** Ind.Code 35–41–2–2 (1988) provides "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

**5.** I.C. 35–41–2–2 (1988) defines the term "knowingly" as follows: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."