

**FILED**

Jul 15 2015, 5:32 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Thomas G. Godfrey<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Angela N. Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Seal,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 15, 2015<br><br>Court of Appeals Case No. 48A02-1410-CR-775<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Dennis D. Carroll, Judge<br><br>Case No. 48C06-1308-FA-1546 |

**Crone, Judge.**

## Case Summary

[1]     Robert Seal appeals his convictions for two counts of class A felony child molesting, two counts of class B felony incest, and one count of class B felony sexual misconduct with a minor. He argues that his federal and state constitutional rights were violated by the State's failure to preserve audio

recordings of his victims' interviews, that the trial court abused its discretion in instructing the jury that time is not an element of the offenses, and that his conviction for class B felony sexual misconduct with a minor should have been merged with one of the class A felony child molesting convictions because the conduct supporting those convictions constitutes a single transaction under the continuous crime doctrine. We conclude that no violation of Seal's constitutional rights occurred, the trial court did not abuse its discretion in instructing the jury, and the continuous crime doctrine is inapplicable. Therefore, we affirm.

## Facts and Procedural History

From 2007 to 2013, Seal lived with his two daughters, R.S. and R.M.S., in a two-bedroom trailer in Madison County. During some of that time, two younger children lived with them, Seal's son R.W.S. and his stepdaughter J.H. R.S. and R.M.S. slept with Seal in his bedroom with the door locked. R.W.S. and J.H. slept in either the living room or the second bedroom. R.S. and R.M.S. were home schooled, and the two younger children went to public school.

Beginning in July 2007, when R.S. was ten years old, until February 2013, when she was sixteen, Seal touched her breasts, bottom, and vagina with his hand and engaged in sexual intercourse and oral sex with her on a regular basis. Beginning in 2009, when R.M.S. was ten years old, Seal had sexual intercourse and oral sex with her. These acts took place in Seal's bedroom with the door locked. Both girls were present and witnessed Seal have sexual intercourse and

oral sex with the other. Sometimes Seal placed a camera on a tripod and recorded videos of their sexual activities. Seal told the girls that they were married to him, and they felt that their relationship with their father was like that of husband and wife.

[4] In June 2013, Seal planned to marry a woman, after which she and her eight-year-old daughter would move in with him. R.S. and R.M.S. were concerned about the eight-year-old's safety if she were to live with them, so they told the woman about the sexual abuse. When Seal found out from the woman what the girls had told her, he became angry, argued with the girls, and left the trailer with his laptop and his moped.

[5] The girls were scared that Seal would return and hurt them, so they called 911. When the police arrived, the girls were "frantic, they were upset, crying … they were screaming, yelling, talking about they were in fear of their life, afraid that they were going to be killed by the father." Tr. at 124. An officer spoke separately with each girl for five to ten minutes in a patrol car to find out why they called 911. He attempted to create and download audio recordings of these conversations, but later the police were unable to find the recordings. The officer did not know why the recordings were lost. The officer prepared a written report of the content of his conversations with the girls that he forwarded to the detective who prepared the probable cause affidavit. *Id*. at 129-30. Later that day, the girls were brought to the police station, where they provided recorded statements.

[6] A police officer called Seal and asked him to come to the station, but Seal said that he was upset because his moped had run out of gas, he did not know where he was, and he was not in the right frame of mind to meet or talk with police. Seal was arrested eight months later in Fort Wayne.

[7] About a week after the 911 call, the detective conducted follow-up interviews with the girls at the station. Although the police attempted to video record these follow-up interviews, for unknown reasons the recordings failed to capture the audio. However, the detective prepared a written summary of the interviews.

[8] The State charged Seal with class A felony child molesting of R.S., class B felony sexual misconduct with R.S., class B felony incest with R.S., class A felony child molesting of R.M.S., and class B felony incest with R.M.S. At trial, the State tendered an instruction to clarify that time is not an element of the offenses. Seal objected. The trial court suggested modifying the instruction to explain that time is not an element but the victim's age at the time of the offense is an element. The trial court gave this modified instruction over Seal's objection.

[9] The jury found Seal guilty as charged. The trial court sentenced Seal to an aggregate term of seventy-two years. He appeals.

# Discussion and Decision

## Section 1 - Seal's federal and state constitutional rights were not violated by the State's failure to preserve audio recordings of the victims' interviews.

[10]  Seal contends that the State's failure to preserve the audio recordings of his daughters' interviews in the patrol car immediately following their 911 call and their follow-up interviews a week later violated his federal and state constitutional rights.[1]  In essence, Seal's argument is that the State failed to preserve evidence, which is generally analyzed as a due process issue.

> When determining whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we must first decide whether the evidence is potentially useful evidence or material exculpatory evidence.
>
> Evidence is materially exculpatory if it possesses an exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.  Exculpatory evidence is defined as evidence tending to establish a criminal defendant's innocence.  A prosecutor's duty to preserve exculpatory evidence is limited to evidence that might be expected to play a significant role in the defendant's defense.  Failure to preserve material exculpatory evidence violates due process regardless of whether the State acted in good or bad faith.
>
> Evidence is merely potentially useful if no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. The State's failure to preserve potentially

---

[1]  In broad strokes, Seal cites the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 12 and 13 of the Indiana Constitution, asserting that he was denied effective assistance of counsel, the right to effective cross-examination, the right to present a defense, and due process.

useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of the police.

*State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010) (citations, quotation marks, and brackets omitted).

[11] With regard to the circumstances of this case, two facts are significant. First, there is no constitutional or statutory requirement that the police record interviews with victims.[2] Second, the State attempted to record the audio of the interviews, and Seal does not contend, nor is there any evidence, that the State intentionally sabotaged or destroyed the audio recordings. Therefore, even if we assumed that the content of the interviews contained potentially useful evidence, there would be no due process violation because Seal cannot show bad faith.

[12] However, Seal contends that it does not matter whether the State acted in good faith or bad faith because the interviews contained materially exculpatory evidence. According to Seal, the girls had many reasons to fabricate their story and his "counsel could have shown the jury the manner in which [the girls] were not telling the truth by using DVDs in court; and the jury could have judged for itself whether to believe whether the victims' explanations given at trial were contrived or appeared reasonable." Appellant's Br. at 12. The interviews were summarized in the police reports, and Seal directs to no

---

[2] We have held that Article 1, Section 12 of the Indiana Constitution does not require the recording of interrogations of the accused in places of detention. *Gasper v. State*, 833 N.E.2d 1036, 1041 (Ind. Ct. App. 2005), *trans. denied*.

statements that tended to establish his innocence. The interviews do not strike us as materially exculpatory evidence but rather as impeachment evidence.

[13] We conclude that Seal's due process rights were not violated by the State's failure to preserve the audio recordings of the victims' interviews. To the extent that Seal asserts that his rights to effectively cross-examine the witnesses and to present a defense were violated, we note again that the interviews were summarized, both girls testified, and Seal fails to explain how the summaries were inadequate to assist him in cross-examining the girls. Although he sets forth numerous facts that he argues were relevant to the girls' motives to fabricate, he was not limited in his scope of cross-examining the girls with regard to those facts. In short, we find no federal or state constitutional violations in this regard.

## Section 2 - The trial court did not abuse its discretion in instructing the jury that time is not an element of the offenses.

[14] The manner of instructing the jury lies within the sound discretion of the trial court, and we will reverse the trial court's decision whether to give an instruction only upon an abuse of that discretion. *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied* (2006). "'The purpose of jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Fowler v. State*, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009) (quoting *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001)). In evaluating jury instructions on appeal, "this Court looks to whether the

tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions." *Short v. State*, 962 N.E.2d 146, 150 (Ind. Ct. App. 2012).

[15] Seal challenges the following instruction:

> Time is not an element of the crime of Child Molesting. If you find that the evidence available to the State of Indiana does not permit the State to specify the exact date of the offense, and if you find beyond a reasonable doubt that the Defendant committed the offenses within reasonable proximity to the date alleged, then the State has met its burden of proof on the issue of the time of the offense.
>
> Although time is not an element of the offenses charged, the age of the victims at the time of the offenses charged is an element.

Appellant's App. at 51; Tr. at 602.

[16] Seal appears to concede that the instruction is a correct statement of the law. *See Baker v. State*, 948 N.E.2d 1169, 1174 (Ind. 2011) ("In general, the precise time and date of the commission of a child molestation offense is not regarded as a material element of the crime."). He also does not argue that the evidence does not support giving the instruction or that the substance of the instruction was covered by other instructions. His argument is that the instruction was more confusing than helpful and was unnecessary. Specifically, he asserts that there is a conflict between "if you find … that the Defendant committed the offenses within reasonable proximity to the date alleged, then the State has met its burden of proof" and "the age of the victims at the time of the offenses

charged is an element." Appellant's App. at 51. He contends that by instructing the jury that all the State had to prove was that he committed the offenses within a reasonable proximity to the dates charged, the jurors might be misled into treating the dates as they related to the ages of the girls as unimportant.

[17] Under the facts of this case, we cannot conclude that the jury was confused by the instruction. Age is an element of all the offenses, and the instruction unequivocally stated so. Based on the statute in effect when Seal committed the offenses, for class A felony child molesting, the State was required to prove that he performed or submitted to sexual intercourse or deviant sexual conduct with a child who was under the age of fourteen. Ind. Code § 35-42-4-3. For class B felony sexual misconduct with a minor, the State was required to prove that he performed or submitted to sexual intercourse or deviant sexual conduct with a child who was at least fourteen but less than sixteen. Ind. Code § 35-42-4-9. For class B felony incest, the State was required to prove that he engaged in sexual intercourse or deviant sexual conduct with another person who was under the age of sixteen, when he knew that the other person was related to him biologically as his child. Ind. Code § 35-46-1-3.

[18] In the charging information, the State did not allege that Seal committed the offenses on specific dates. Rather, the State charged Seal with committing the offenses within a time range. Appellant's App. at 66-68. With regard to R.S., the State charged Seal with committing class A felony child molesting between January 1, 2007, and November 3, 2010, when she was under fourteen. *Id*. at

66. The State charged him with class B felony sexual misconduct with a minor between November 4, 2010, and November 3, 2012, when R.S. was at least fourteen but not more than sixteen. *Id.* R.S.'s age is important and affected the felony level of the offenses. However, the evidence showed that Seal regularly and frequently engaged in sexual intercourse and deviant sexual conduct with R.S. throughout both time periods, well before and well after R.S.'s birthday. This is not a situation where a defendant committed a single act which is punishable as a different class of felony depending upon whether it occurred before or after the victim's birthday. *See Barger v. State*, 587 N.E.2d 1304, 1307 (Ind. 1992) ("The exact date becomes important only in limited circumstances, including the case where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies.").

[19] As for R.M.S., the charging information alleged that Seal committed child molesting and incest between November 3, 2009, and August 31, 2012. R.M.S. was under the age of fourteen for the entire time as charged. Her age during that time period was not a fact in dispute. Further, as with R.S., the evidence showed that Seal committed multiple instances of sexual intercourse and deviant sexual conduct.

[20] In closing argument the State explained the application of the instruction and how the time period alleged in the charges was related to the victims' testimony and ages. Tr. at 555, 559-60. Given the charges and the evidence produced at trial, we cannot conclude that the instruction confused the jury. Accordingly, the trial court did not abuse its discretion in giving the instruction.

## Section 3 - The continuous crime doctrine does not apply.

[21]     Although Seal concedes that he committed acts that comprise the offenses of class A felony child molesting of R.S. and class B felony sexual misconduct with R.S., he contends that the continuous crime doctrine applies to his convictions and requires that the latter be merged with the former.[3]  Both Seal and the State assert that the continuous crime doctrine applies when "actions which are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction."  Appellant's Br. at 17 (citing *Nunn v. State*, 695 N.E.2d 124, 125 (Ind. Ct. App. 1998)); Appellee's Br. at 20 (citing a case that relied on *Nunn*).  After this appeal was fully briefed, our supreme court handed down *Hines v. State*, 30 N.E.3d 1216 (Ind. 2015), in which it disapproved of *Nunn*'s phrasing of the doctrine, stating that it "too broadly paraphrased precedent."  *Id*. at 1220.  Our supreme court stated that the "continuous crime doctrine applies only where a defendant has been charged multiple times with the same 'continuous' offense."  *Id*.  Specifically, the *Hines* court stated,

> The continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense.  The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two

---

[3]  We observe that the continuous crime doctrine is distinct from the concept of an "episode of criminal conduct," which applies under Indiana Code Section 35-50-1-2 to limit the aggregate term of consecutive sentences when the convictions are not for crimes of violence and the "offenses or a connected series of offenses … are closely related in time, place, and circumstance."

distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. The Legislature, not this Court, defines when a criminal offense is "continuous," e.g. not terminated by a single act or fact but subsisting for a definite period and covering successive, similar occurrences. We have applied the continuous crime doctrine in the context of felony murder and robbery, confinement, and kidnapping; situations where the crime charged, as defined by statute, was "continuous." For example, in *Eddy v. State*, [496 N.E.2d 24, 28 (Ind. 1986),] we interpreted the statutory requirement that a homicide-robbery transaction be continuous to encompass a transaction where all the statutory elements of the robbery had been completed *before* the commission of the homicide.

*Id*. at 1219-20 (footnotes, citations, and quotation marks omitted).

[22] The *Hines* court quoted at length from *Eddy*. In *Eddy*, the court interpreted the phrase "while committing" as it was used in the statute defining felony murder. 496 N.E.2d at 27-28. At that time the statute provided, "A person who "kills another human being *while committing* or attempting to commit [certain listed felonies] commits murder, a felony." Ind. Code § 35-42-1-1(2) (emphasis added). The *Eddy* court rejected the defendant's contention that the offense of felony murder required that the homicide occur before all the statutory elements of robbery were complete. 496 N.E.2d at 27-28. The *Eddy* court explained, "A homicide and robbery are deemed to be one continuous transaction when they are closely connected in time, place, and continuity of action." *Id*. Thus, the continuous crime doctrine was useful in determining whether the defendant's conduct constituted the single offense of felony murder by focusing on the scope of the phrase "while committing."

[23] In contrast to *Eddy*, in which homicide and robbery were statutorily defined as one crime if a person killed another human being while committing robbery, the crimes in *Hines* were class C felony criminal confinement and class D felony battery. The *Hines* court noted that the defendant "was not convicted of multiple charges of criminal confinement, nor multiple charges of battery. Nor is Battery a crime for which all of the elements necessary to impose criminal liability are also elements found in Criminal Confinement, or vice versa." 30 N.E.3d at 1221. The *Hines* court concluded that criminal confinement and battery "are two distinct chargeable crimes to which the continuous crime doctrine does not apply." *Id.*

[24] Here, the evidence showed that Seal sexually molested R.S. multiple times both before and after she turned fourteen. The molestation of R.S. before she turned fourteen is one chargeable crime, and the molestation of R.S. after she turned fourteen is a different chargeable crime. *See* Ind. Code § 35-42-4-3; 35-42-4-9. Seal was not charged multiple times with the same offense. Under *Hines*, the continuous crime doctrine does not apply.

[25] The extent to which *Hines* imposes new limitations upon the application of the continuous crime doctrine has yet to be discerned. Regardless of whether *Hines* imposes a more restrictive use of the doctrine or not, we note that even under the broader application of the doctrine as articulated in *Nunn*, the doctrine would not apply under the facts of this case. Seal's multiple acts of molestation committed over a five-year period cannot plausibly be considered "so

compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Nunn*, 695 N.E.2d at 125.

[26] Based on the foregoing, we affirm Seal's convictions.

[27] Affirmed.

Brown, J., and Pyle, J., concur.