## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2015, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Vanderpool Law Firm, PC
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Demario M. Loston,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 10, 2015<br><br>Court of Appeals Case No.<br>85A04-1504-CR-153<br><br>Appeal from the Wabash Circuit Court<br><br>The Honorable Robert R. McCallen, III, Judge<br><br>Trial Court Cause No.<br>85C01-1407-F5-641 |

**Kirsch, Judge.**

[1] Demario M. Loston was convicted after a jury trial of battery[1] as a Class A misdemeanor and criminal trespass[2] as a Class A misdemeanor. He was given a one-year sentence for each offense with the sentences ordered to run consecutively for an aggregate sentence of two years executed. Loston appeals and raises the following restated issues for our review:

> I. Whether the continuous crime doctrine applies to Loston's convictions for Class A misdemeanor battery and Class A misdemeanor criminal trespass; and

> II. Whether Loston's consecutive sentences are inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] On July 19, 2014, Leah Neupert was spending time with friends at her residence in the Treeway Inn located in Manchester, Indiana and spoke with Loston, who was an acquaintance of hers, on the phone. Neupert and Loston made plans for Neupert to pick Loston up from a friend's home in Warsaw. Loston, believing that Neupert wanted to have sex with him, gave her

---

[1] *See* Ind. Code § 35-42-2-1.

[2] *See* Ind. Code § 35-43-2-2.

directions to the house where he was staying. Neupert and her friend, Savannah Baermann, later drove Baermann's vehicle to pick up Loston.

[4] When Loston entered the vehicle, he brought a bottle of vodka, juice, and his cell phone with him. Loston's cell phone battery was dead, so he plugged the phone into Baermann's car charger and placed it on the floorboard between the driver's seat and the passenger seat. Baermann drove to three different hotels in Warsaw to check room prices because Loston wanted to have sex with Neupert. Loston did not have enough money for a hotel room and became angry when the plan to get a hotel room was not successful. The three then decided to go to the Aloha Bar in Warsaw.

[5] After sitting and drinking in the bar's parking lot, Loston met up with some friends and went inside, leaving his cell phone and vodka in Baermann's vehicle. Neupert and Baermann went inside the bar also, but did not hang out with Loston. Neupert and Baermann were at the bar, drinking and having a good time, from 9:00 p.m. until approximately 2:30 a.m. Prior to leaving, Baermann went up to Loston and told him they were leaving and asked for gas money. Loston shoved Baermann into the women's restroom, tried to undress her, and told her, "just let me see your boobs." *Tr.* at 285. Because Loston had her cornered in a stall, and she wanted him to leave her alone, Baermann showed him her breasts, and Loston threw ten dollars at her.

[6] Neupert and Baermann left the bar and went back to the Treeway Inn in Manchester. They went to the room of Stephen Keirn, who was also living at

the hotel. When Neupert and Baermann reached Manchester, they realized that Loston had left his cell phone in the vehicle. They discussed whether to return to the bar, but were not able to because they did not have enough gas money to drive there. Neupert planned to return the cell phone to Loston the next time she saw him and took it and the vodka with her into Keirn's room. Once inside, she placed the cell phone on a coffee table near the door.

[7] About ten minutes after Neupert and Baermann arrived, Loston, barged into Keirn's room. The door to the room had been closed, but Loston opened it and entered without knocking, announcing himself, waiting for permission to enter, or having someone open the door for him. Loston was visibly angry and headed straight to where Neupert was sitting. He grabbed her and said, "Bitch, you want to play games?" *Id*. at 115, 135, 137, 141. Loston did not given Neupert a chance to respond before he pulled her off the bed and began punching her in the face with his fist. Loston looked at Keirn, and when Keirn did not do anything to stop him, Loston again punched Neupert in the face. She fell to the floor, and Loston looked at Keirn again before stomping on Neupert's face and knocking her unconscious.

[8] Baermann attempted to stop Loston by grabbing his arm, and he punched her in the jaw. Loston then retrieved his cell phone from the table and ran from the room. Keirn and Baermann followed Loston outside. Baermann was worried that Loston might vandalize her vehicle. Loston lunged at Keirn, asking him "if [he] wanted some," and Keirn told Loston that he "was not in it" and stepped to the side. *Id*. at 166. Loston then hit Keirn, and Keirn responded by

punching Loston. Loston began to lift a cement block off the ground and threatened to smash Baermann's vehicle with it. Loston's friends told him to stop because the police were coming. Loston jumped into his friends' vehicle, and they quickly drove away.

Baermann went back to Keirn's room and called police. Neupert regained consciousness about three minutes after being stomped in the face. Neupert bled heavily from her face and nose, and as a result of the battery, her eyes remained black and blue for almost a month and a half afterwards.

The State charged Loston with Level 5 felony battery, two counts of Class A misdemeanor battery, one count of Class B misdemeanor battery, and Class A misdemeanor criminal trespass. Loston was also alleged to be a habitual offender. Prior to trial, the Class B misdemeanor battery was dismissed. After a three-day jury trial, Loston was found guilty of one count of Class A misdemeanor battery and Class A misdemeanor criminal trespass and was acquitted of the other charges. The habitual offender allegation was also subsequently dismissed. Loston was sentenced to one year for each of his convictions and ordered to serve the sentences consecutively, for a total sentence of two years executed. Loston now appeals.

## Discussion and Decision

## I. Continuous Crime Doctrine

Loston argues that his convictions for battery and criminal trespass cannot both stand because the continuous crime doctrine applies. The continuous crime

doctrine is a category of Indiana's prohibition against double jeopardy. *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). He contends that the continuous crime doctrine applies when "actions which are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Seal v. State*, 38 N.E.3d 717, 724 (Ind. Ct. App.), *trans. denied*. Loston asserts that, because he was involved in "one purposeful criminal act . . . the physical retrieval of his cell phone from another individual," his actions mirror the above elements to establish "one 'continuous crime.'" *Appellant's Br*. at 10.

[12] Our Supreme Court recently held that the continuous crime doctrine "applies only where a defendant has been charged multiple times with the same 'continuous' offense." *Hines v. State*, 30 N.E.3d 1216, 1220 (Ind. 2015). The *Hines* Court specified that,

> The continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense. The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. The Legislature, not this Court, defines when a criminal offense is "continuous," e.g. not terminated by a single act or fact but subsisting for a definite period and covering successive, similar occurrences.

*Id*. 1219 (citations and quotations omitted).

[13] Here, the continuous crime doctrine does not apply to Loston's convictions because his convictions are for two distinct chargeable crimes. He was convicted of one count of Class A misdemeanor battery and one count of Class A misdemeanor criminal trespass. Loston was not convicted of multiple charges of the battery, nor multiple charges of criminal trespass.

[14] Additionally, battery is not a crime for which all of the elements necessary to impose criminal liability are also elements found in criminal trespass, or vice versa. As charged, the elements of Loston's conviction for Class A misdemeanor battery were that he knowingly or intentionally touched Neupert in a rude, insolent, or angry manner that resulted in bodily injury to Neupert. Ind. Code § 35-42-2-1(b)(1), (c); *Appellant's App*. at 16. As charged, the elements of Loston's conviction for Class A misdemeanor criminal trespass were that he (1) not having a contractual interest in the property, knowingly or intentionally entered the real property of Keirn after having been denied entry by Keirn or Keirn's agent, or (2) knowingly or intentionally interfered with the possession or use of the property of Keirn without Keirn's consent. Ind. Code § 35-42-2-2(b)(1), (4); *Appellant's App*. at 17. Loston completed his criminal trespass when he angrily entered Keirn's room without knocking on the closed door, waiting for permission to enter, or having anyone open the door for him. He completed his battery when he punched Neupert in the face multiple times and stomped her face. We, therefore, conclude that the continuous crime doctrine does not apply in the present case.

# II. Inappropriate Sentence

Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

Loston contends that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Specifically, he asserts that his sentence is inappropriate because his sentences were ordered to be served consecutively. He argues that, as to the nature of the offense, because he was

only convicted of misdemeanor battery, and not the Level 5 felony with which he was charged, the "charges *for which he was convicted* were not, by their nature, extremely serious." *Appellant's Br.* at 11. As to his character, Loston claims that, although he has a criminal history, it is not significant because many of the offenses were dismissed, and the convictions are not recent in time. He further contends that he has a child for whom he provides care, and he has employment available.

[18] Loston was convicted of one count of Class A misdemeanor battery and one count of Class A misdemeanor criminal trespass. "A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year." Ind. Code § 35-50-3-2. The trial court sentenced Loston to one year for each of his convictions and ordered the sentences to be served consecutively, for an aggregate sentence of two years executed.

[19] As to the nature of the offense, after Loston was unable to secure a room to have sex with Neupert, he spent the night drinking with Neupert and Baermann and, later, other friends at a bar. When Baermann told Loston that she and Neupert were leaving the bar and asked for gas money, Loston forced Baermann into a restroom stall and attempted to undress her. Later, after Neupert and Baermann had left and went to Keirn's hotel room, Loston showed up and barged into the room without announcing himself, knocking, waiting for permission to enter, or having someone open the door for him. He angrily entered a stranger's residence and headed straight for Neupert, grabbed her, and began punching her in the face until she fell to the floor. Loston then

stomped on Neupert's face, causing her to lose consciousness for several minutes and to have black and blue eyes for several weeks thereafter. When Baermann attempted to intervene, Loston punched her in the face. He then ran out of the room, and Baermann and Keirn followed him. After lunging at Keirn, Loston punched him in the face. We do not find Loston's sentence inappropriate in light of the nature of the offense.

[20] As to his character, Loston has a significant criminal history. As a juvenile, Loston was adjudicated delinquent at least ten times for illegal consumption, criminal confinement, sexual battery, battery, theft, and carrying a handgun without a license. As an adult, has been arrested and charged with crimes approximately eighteen times. He has approximately six misdemeanor convictions and five felony convictions for offenses that include armed robbery, domestic battery, battery resulting in bodily injury, criminal recklessness, invasion of privacy, residential entry, and resisting law enforcement. Loston also has numerous probation violations. We conclude that Loston's consecutive sentences are not inappropriate in light of his character.

[21] Affirmed.

Najam, J., and Barnes, J., concur.