**Mitchell STROUD, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 279S41.

Supreme Court of Indiana.

Oct. 16, 1979.

Thomas C. Ryan, Deputy Public Defender, Ft. Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Mitchell Stroud was charged by information in Allen Superior Court with felony murder in connection with the shooting death of Daniel Norris. On August 30, 1978, he was found guilty of this charge by a jury. Appellant was sentenced to a determinate prison term of forty years.

The only issue appellant raises on this appeal concerns whether there was sufficient evidence to support the giving of an instruction on felony murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.) provides in part:

"A person who:

.   .   .   .   .

(2) Kills another human being while committing or attempting to commit . . . robbery; commits murder, a felony."

Appellant claims there was no evidence tending to prove: (1) that appellant caused the death of Norris; and (2) that Norris was killed during the commission of a felony. We note as an initial matter that appellant admits taking part in the robbery. The facts pertinent to the disposition of this question are as follows.

On April 3, 1978, Paul Chapman and the decedent Daniel Norris were hitchhiking in the city of Fort Wayne when they were picked up by Greg Brownlow and appellant Mitchell Stroud. Brownlow was driving the car. After they had travelled a short distance, Brownlow pulled the car into a darkened parking lot. Stroud pointed a gun at Chapman and Norris, and Brownlow asked them how much money they had. They were ordered to raise their hands, and while Brownlow held the gun on the two, Stroud searched them, removing their wallets and other belongings from them. Brownlow then handed the pistol back to Stroud, who kept it trained on Chapman and the decedent Norris. They were then told to close their eyes. Norris refused to shut his eyes, and several more words were exchanged. Norris then grabbed for the gun Stroud was holding. As the two struggled for control of the gun, two shots were fired. The first struck appellant Stroud on the arm. The second shot struck Norris in the head, and he died from this wound a short time later. The struggle over the gun and the shootings took place very quickly.

Among the final instructions read to the jury was State's instruction number four, which states in part:

"To sustain the charge of murder, the State must prove the following propositions:

1. That the defendant was committing or attempting to commit the crime of robbery;

2. That when the defendant did so he engaged in conduct causing the death of Daniel Grant Norris, whether the killing was intentional, unintentional or accidental. If you find from your consideration of all the evidence that each of these propositions had been proved beyond a reasonable doubt, then you should find the defendant guilty. . . . ."

Record at 39. The defendant objected to the giving of this instruction in the following manner:

"MR. RYAN: Okay. The defendant also objects to [number] four specifically for the reason that it is not an accurate proposition of law when under the facts of this case the conduct or the act of the defendant is not shown to be the efficient legal cause of the death but a non-volitional act of the victim himself.

THE COURT: Well, are you sure about the way you want to say that?

MR. RYAN: What I'm trying to say is that under the facts and evidence of this case, the discharging of the weapon was an accident and a result of the struggle initiated by the victim and that the act is attributable to his conduct—joint perhaps, but not solely that of the defendant.

Record at 240–41. Appellant thus contends there was insufficient evidence to support the giving of this instruction. *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836; *Wathen v. State,* (1965) 246 Ind. 245, 204 N.E.2d 526. He argues that the uncontroverted evidence shows that the shooting was an accident and occurred as the result of a struggle for the gun between appellant and Norris. Therefore, it is asserted, there was no evidence that appellant caused Norris' death. On the contrary, he claims Norris caused his own death by attempting to take the weapon away from his robbers.

We find this argument contains a fatal flaw. Appellant's position is grounded on the assumption that the shooting was not a part of the admitted robbery. He asserts that the robbery was completed before Norris was shot. If this is true, he argues, then the killing did not occur "while" he was "committing or attempting to commit . . . robbery," under instruction number four and Ind.Code § 35–42–1–1 (Burns 1979 Repl.).

Appellant advances an overly technical definition of robbery, one which would have the crime completed, for the purpose of applying the felony murder statute, when appellant first had the victims' possessions in his hand. As with other theft-related crimes, however, there must be an asportation of the property. This had not yet occurred in the present case. In fact, it is clear that Norris' lunge for the gun and the consequent shooting intervened between the taking and the carrying away of the property, and therefore occurred during the perpetration of this robbery. The robbery and the shooting "were so closely connected in point of time, place and continuity of action as to be one continuous transaction." *Bizup v. People,* (1962), 150 Colo. 214, 218, 371 P.2d 786, 788. *See Bissot v. State,* (1876) 53 Ind. 408; *State v. Adams,* (1936) 339 Mo. 926, 98 S.W.2d 632. *See also* W. LaFave & A. Scott, Criminal Law pp. 556–57 (1972).

We hold there was sufficient evidence upon which the trial court could have based the giving of this instruction. It is true that appellant and his cohort had already taken property from Norris and Chapman by fear or a threat of force. Nevertheless, appellant and Brownlow had not yet attempted to flee. They had not released Norris and Chapman, and had ordered them to raise their hands and close their eyes. Stroud and Brownlow were, in fact, still holding them at gunpoint when Norris made his fatal attempt to obtain control over the weapon. Thus, there was clearly sufficient evidence that Norris was killed *during* the commission of the robbery to justify the giving of State's instruction number four. Further, if the robbery was

still taking place, from a definitional standpoint, when Norris was shot, it makes no difference that he also may have been part of the cause of the shooting. There is no error here.

The judgment of the trial court is affirmed.

All Justices concur.