**Mark MAURICIO and Arnold Mauricio, Jr., Appellants,**

v.

**STATE of Indiana, Appellee.**

Nos. 683S203, 683S213.

Supreme Court of Indiana.

April 2, 1985.

Rehearing Denied May 28, 1985.

Jerrald A. Crowell, Bowman, Crowell & Teeters, Fort Wayne, for appellants.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Mark J. Mauricio was found guilty by a jury in the Allen Circuit Court of Count I, Murder, and Count II, felony murder. The trial judge sentenced him only for the felony murder conviction in Count II, to a term of sixty (60) years.

Defendant-Appellant Arnold Mauricio, Jr., was found guilty by a jury in the Allen Circuit Court of Count I, aiding felony murder, and Count II, robbery. Arnold Mauricio, Jr., subsequently was sentenced by the trial judge on the aiding a felony murder charge in Count I, to a term of thirty (30) years.

Mark Mauricio presents only the issue of sufficiency of the evidence in this direct appeal.

Arnold Mauricio, Jr., raises six issues as follows:

1. failure of the information to properly charge felony murder;

2. sufficiency of the evidence;

3. improper identification procedure of Officer Lalone;

4. failure to prove armed robbery as charged;

5. improper consolidation of trials of defendants; and

6. violation by State of discovery orders.

On February 3, 1982, Nancy A. Rehm, the decedent, Rhonda Unverferth, and Joann Wenning were students at Indiana Institute of Technology in Fort Wayne, Indiana. That day the three girls left basketball practice at the school around 8:00 p.m. They rode two snowmobiles owned by Nancy Rehm's father en route to the Rehm home. A police officer stopped them, gave them a ticket for riding snowmobiles on a public street, and ordered them to cease

doing so. They called Nancy's father and waited on a snowbank for him to arrive and take the snowmobiles home. As they waited, two men approached them and asked who owned the snowmobiles. The girls ignored the question. One of the men, identified as the shorter of the two, Mark Mauricio, repeated the question, to which Nancy Rehm answered; "Mine." Mark and Arnold Mauricio then approached the vehicles and Mark ordered the girls to start them. The women initially thought the defendants were joking with them, but changed their minds and stood between the defendants and the snowmobiles. Defendant Mark Mauricio and victim Nancy Rehm engaged in a shoving match. Mark pulled a gun from his pocket and fired it into the ground. Again, Mark Mauricio ordered the victim to start the snowmobile, but she refused. While Rhonda Underferth and Joann Wenning ran toward their dormitory, they heard two more shots. Joann Wenning continued to the dormitory for help while Rhonda Unverferth returned to Nancy. When Rhonda reached the scene, defendant Mark Mauricio and the victim were still struggling over the vehicles and the taller one, Arnold Mauricio, was sitting on one of the two snowmobiles. Rhonda pushed Arnold off the vehicle and grabbed the keys. Arnold then got on the other snowmobile, started it, and drove south on Schick Street. Rhonda chased him but could not catch him. When she came back, victim Nancy Rehm was face up in the middle of the street with a gunshot wound in the head. Mark Mauricio was not in sight.

Joann Wenning brought security guard Keith Leroy Williams to the scene at about 9:15 p.m. Williams said it appeared to him that Nancy was dead. He ordered nearby students to call the police and for an ambulance. He then found tracks leading from the body into a nearby alley. There were no other fresh tracks around. When he reached the entrance to the alley he observed someone get up from a crouching position and run down the alley. Williams chased through the alley and around some buildings, following fresh tracks in the snow. He lost the trail behind an abandoned house. The tracks in the snow had led to this point. The officers returned Mark Mauricio to the scene where both Joann Wenning and Rhonda Unverferth identified him as the defendant with the gun. Rhonda described the taller man as being noticeably taller than Mark, wearing dark jeans, a brown wool plaid jacket and a black ski mask with eyeholes and no colored trim. She was unable to see either of their faces because of the ski masks, but identified Mark from the clothes he was wearing and his body frame. She had no doubt about her identification. Joann also described both of the men by the clothes they were wearing. She was further able to identify Mark Mauricio by the sound of his voice.

At approximately 9:30 p.m., Fort Wayne police officer Robert L. Lalone was riding north in a tow truck due to a snow emergency and observed a young man riding a snowmobile. He ordered the person to get off the streets with the snowmobile. Three or four minutes later he received the police report of the shooting. The snowmobile was later found on the same street, within a block of Arnold Mauricio's home. Officer Lalone identified Arnold Mauricio as the driver of the snowmobile stopped the night of this incident. Nancy Rehm died the next day from brain destruction caused by the gunshot wound.

**I**

Arnold Mauricio, Jr., was charged in Count I with knowingly and intentionally aiding Mark Mauricio in the commission of the offense of attempted robbery in which said Mark Mauricio did then and there unlawfully kill Nancy A. Rehm by shooting at and against the said Nancy A. Rehm with a certain deadly weapon, to-wit, a handgun, and thereby inflicting a mortal wound in and upon the said Nancy Rehm causing her to die on February 4, 1982. This information charges Arnold Mauricio, Jr., with aiding, inducing or causing an offense pursuant to Ind.Code § 35–41–2–4 (Burns Repl. 1979) by aiding Mark Mauricio in the crime

of felony murder pursuant to Ind.Code § 35–42–1–1(2) (Burns Repl.1979).

■■■ Arnold Mauricio complains that the information in Count I did not sufficiently set out the details of the robbery, the underlying felony. We disagree. There is no lack of notice to defendant Arnold Mauricio, Jr., as to the underlying crime with which he was charged. He was charged in Count II with theft of a snowmobile. Other charges against brother Mark Mauricio clearly spelled out that Mark Mauricio was charged with attempted robbery of snowmobiles belonging to the victim. Arnold Mauricio, Jr., does not dispute that a snowmobile was stolen, he claims only that he did not perpetrate the act. There was sufficient description in all of the charges against these defendants, including Count II against Arnold Mauricio, Jr., from which it is apparent what the charges were and which would foreclose any further charges on the same subject presenting a double jeopardy problem. The purpose of an affidavit is to advise the defendant of the particular crime charged so he can prepare a defense. *Keel v. State,* (1975) 165 Ind.App. 579, 333 N.E.2d 328, *reh. denied.* A defect in an affidavit is grounds for reversal only where it prejudices the substantial rights of the defendant. *Thome v. State,* (1973) 260 Ind. 70, 292 N.E.2d 607; *Gubitz v. State,* (1977) 172 Ind.App. 343, 354; 360 N.E.2d 259, 267, *trans. denied.* No reasonable interpretation of the facts surrounding this information could lead to any conclusion other than Arnold Mauricio, Jr., was aware of the nature of the charge against him. Therefore, his due process rights were not violated. In *Smith v. State,* (1983) Ind., 445 N.E.2d 998, this Court held that absence of detail in an information is fatal to the information only if such phraseology misleads the defendant or fails to give him notice of the charges against him. The information in Count I in conjunction with Count II fails in neither of these regards. We therefore find no reversible error on this issue.

## II

Both defendants Mark and Arnold Mauricio claim there was insufficient evidence of probative value to support the jury's convictions..

Our standard of reviewing a sufficiency question has been clearly delineated in *Anderson v. State,* (1984) Ind., 469 N.E.2d 1166, 1169, as follows:

"When reviewing the sufficiency of the evidence this Court will not weigh the evidence or determine the credibility of witnesses. Rather, we will consider only that evidence which is favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. The verdict will be upheld so long as there is sufficient evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (citations omitted)."

Mark Mauricio was positively identified by Rhonda Unverferth and Joann Wenning immediately after this incident. They identified him by his clothing, general appearance, and his voice. Furthermore, his tracks in the snow led to a point where he was found hiding. Although the gun used in the incident was never found, Defendant Mark Mauricio, by his own admission, had access to a small handgun of the same caliber, .25, as a shell casing found at the scene.

■■■ The identification of Arnold Mauricio was circumstantial since he could not be identified positively by the witnesses at the scene. He did, however, match the general description given by witnesses to the incident. Also, he was the brother of co-defendant Mark Mauricio and was known to have been with defendant Mark Mauricio earlier that day. Officer Lalone positively identified Arnold Mauricio as being on a snowmobile matching the description of the one stolen immediately after the crime. This stolen snowmobile was found early the next morning, about a block from the home of defendant Arnold Mauricio. Also, Sharon McDonald testified she heard a conversation between Mrs. Tuttle and Tuttle's

daughter, Lisa Michael, in which they were discussing a plan to establish a false alibi for Lisa's boyfriend, defendant Arnold Mauricio. Testimony of such false alibi was put into evidence by the defense. There was, therefore, sufficient evidence before the jury regarding the identification of both defendants justifying their verdicts of guilty.

■ Arnold Mauricio, Jr. further argues there was insufficient evidence to convict him of felony murder because he was not present when the murder occurred. He claims that his absence from the scene when the fatal shot was fired absolves him of any responsibility for the murder. Arnold Mauricio, Jr. offers two independent theories to support his claim, both of which are implausible. First he argues that he had abandoned the attempted robbery prior to the shooting. To abandon the aiding of a crime the individual must show his renunciation of the crime occurred voluntarily and prior to the crimes commission. *Norton v. State*, (1980) 273 Ind. 635, 408 N.E.2d 514. Arnold Mauricio, Jr. remained at the scene after Mark Mauricio pulled out a gun and fired it. Subsequently, he rode away on one of the snowmobiles. Thus, the evidence clearly shows that Arnold Mauricio, Jr. did not voluntarily renounce his involvement in these crimes. Second, Arnold Mauricio argues that the murder did not occur during his perpetration of a felony because the fatal shot occurred after the asportation of the snowmobile. Since the robbery was complete prior to the murder, he argues, he cannot be convicted of felony murder. We have held that before a robbery or other theft related crime is complete there must be an asportation of property. *Thompson v. State*, (1982) Ind., 441 N.E.2d 192, 194; *Stroud v. State*, (1979) 272 Ind. 12, 14, 395 N.E.2d 770, 771. However, this robbery and shooting were so closely connected in point of time, place and continuity of action as to constitute one continuous scheme or transaction. *Thompson v. State, supra; Stroud v. State, supra.* Arnold Mauricio, Jr. rode one of the stolen snowmobiles away from the site where the murder was to occur. Conse-

quently, he cannot disavow responsibility for the murder just because he was transporting stolen property and exacting his escape at the moment the murder occurred. There is no error presented here.

### III

■ Appellant Arnold Mauricio, Jr., contends the identification testimony of Officer Lalone should not have been admitted because his identification was tainted by his first viewing a single photograph of defendant Arnold Mauricio, Jr. The State contends Officer Lalone's identification was based sufficiently on his independent recollection of Arnold Mauricio, Jr., from the day of this incident and that the viewing of the single photograph was accidental and incidental to his investigation of these crimes. Therefore, it was not unduly suggestive.

The record shows that Officer Lalone had viewed a person on a snowmobile close to the scene of the crime shortly after its occurrence. It was not known at that time that Arnold Mauricio, Jr., was one of the perpetrators. Several things were known about the perpetrator, however, that resulted in the police checking John Jauiequis and his mother, Suzanne. They were asked to come to the police station for questioning regarding the incident and to have Officer Lalone observe John Jauiequis. Officer Lalone did observe him and said he was not the man. Incident to questioning Jauiequis, a photograph of Arnold Mauricio, Jr., was present. John Jauiequis identified the subject of the photograph to Detective John Phenicie as Arnold Mauricio, Jr. When Lalone came into the office, he happened to see the photograph of Arnold Mauricio, Jr., and identified it as a photograph of the man he had seen on the snowmobile. Officer Lalone was then able to state that Arnold Mauricio, Jr., was the person on the snowmobile and made a positive identification of him. It is apparent that the photograph was not presented to Lalone as an identification witness with implications of undue suggestibility. He

was one of the police officers investigating this crime and came upon the photograph during his investigation. He unequivocally stated he was able to identify Arnold Mauricio, Jr., upon observing him, as the person he saw that night on the snowmobile. He also stated he did not base his identification on the photograph but from recollection of personal observation. *See Allen v. State*, (1982) Ind., 439 N.E.2d 615; *Parker v. State*, (1976) 265 Ind. 595, 358 N.E.2d 110. The court properly permitted Officer Lalone's testimony as to identification of Arnold Mauricio, Jr.

## IV

■ Defendant Arnold Mauricio, Jr., next claims that the State failed to prove robbery against him because it failed to prove that defendant Mark J. Mauricio was his co-conspirator. Arnold Mauricio, Jr., was referring to the fact that Count II of the information, charging him with robbery, used the language that he committed the act of robbery, "while acting with a co-conspirator." The information in every other regard charged Arnold Mauricio, Jr., with robbery and cited in the information to Ind.Code § 35–42–5–1 (Burns Repl.1979), which is the robbery section. The information does not set out any elements of conspiracy to commit robbery but directly charges Arnold Mauricio, Jr., with robbery. The State's contention is correct that the use of the reference that Defendant was acting as a co-conspirator was surplusage in the robbery information and not an element of the charge. Since it is clear Defendant was charged with robbery and the evidence clearly proved he committed such a crime, the fact such surplusage appeared in the information and was not proved does not present reversible error. *Heflin v. State*, (1977) 267 Ind. 427, 370 N.E.2d 895, *reh. denied.*

## V

■ Defendant Arnold Mauricio, Jr. claims the trial court erred in consolidating his trial with that of his brother, defendant Mark J. Mauricio. It is the State's conten-

tion the trial court acted within its discretion in consolidating the two causes.

The State filed its motion to consolidate the two causes on April 23, 1982, and the trial court granted it after a hearing on May 24, 1982. Neither of the defendants objected at this time. Subsequently, the parties agreed to a trial date. On August 30, 1982, defendant Arnold Mauricio petitioned the trial court to reconsider the consolidation on the grounds that there were letters written by Mark Mauricio that would prejudice him. The motion was denied on August 31, 1982, but the trial court granted a motion *in limine* which prevented the introduction of the letters at trial. Said letters were not introduced into evidence. Defendant now claims a different reason for finding error in the trial court's ruling. He claims he was prejudiced by the strong evidence against Mark Mauricio that would lead the jury to convict him just because he was Mark Mauricio's brother. Furthermore, the testimony of Officer Lalone put him on one of the snowmobiles. Appellant does not present the same question on appeal that he did to the trial court. *Coffee v. State*, (1981) Ind., 426 N.E.2d 1318. The acts charged against both of these defendants were so closely connected in time, place, and occasion, that it would be difficult to separate proof of one charge from the others. There was thus sufficient similarity to consolidate the trials pursuant to Ind.Code § 35–3.1–1–9(b)(3)(B) [ (Burns Repl.1979) ] [repealed effective September 1, 1982; replaced by § 35–34–1–9 (Burns Supp.1984) ] The trial court accordingly did not abuse its discretion in consolidating these cases for trial.

## VI

■ Finally, defendant Arnold Mauricio, Jr., argues the State prejudiced him by calling a surprise witness that had not been revealed in discovery during the State's rebuttal. The witness in question was Sharon McDonald, who testified in rebuttal after the defense had presented its evidence and rested. Defendant, Arnold Mauricio, Jr., had presented evidence concern-

ing an alibi, supported by testimony from Arnold Mauricio's girlfriend, Lisa Michael, and her mother, Mrs. Tuttle. The State in rebuttal then presented Sharon McDonald who testified Tuttle and Michael were planning to establish a false alibi to help Arnold Mauricio, Jr. The State contends it was not necessary to discover this witness since she was used in rebuttal only. Although discovery matters are generally discretionary with the trial court it is ordinarily considered improper for a trial court to allow a witness who was not listed in discovery to testify unless the remedy of a continuance is granted to the other party to meet such testimony. *Morgan v. State,* (1982) Ind., 440 N.E.2d 1087. An exception to this rule is where the witness is brought in on rebuttal. *Smith v. State,* (1982) Ind., 439 N.E.2d 634; *Tillman v. State,* (1980) 274 Ind. 39, 408 N.E.2d 1250. Here Sharon McDonald testified only in rebuttal to the alibi testimony and was not permitted to testify further. The State attempted to elicit additional testimony from the witness but defense objections were sustained and she testified no further. Appellant claims the State was aware of Sharon McDonald as a rebuttal witness for some time prior to trial. He claims the State, therefore, was remiss in not furnishing such potential testimony to the defendant, citing our case of *Reid v. State,* (1978) 267 Ind. 555, 372 N.E.2d 1149. In *Reid* we held that where the record shows clearly that there was a request for discovery of witnesses and rebuttal witnesses were well known to the State, there is a duty to provide them. *See also United States v. Agurs,* (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; *Brady v. Maryland,* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *Richard v. State,* (1978) 269 Ind. 607, 382 N.E.2d 899, *cert. denied,* (1979) 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781. Here there is neither a showing that there was a clear record of request for discovery by defendant nor proof there was request for a continuance when the testimony was offered. *Spears v. State,* (1980) 272 Ind. 634, 401 N.E.2d 331, *reh. granted,* 272 Ind. 647, 403 N.E.2d 828. Defendant claims a continuance

would not have solved his problem because the witness was called by the State for the specific purpose of discrediting the evidence given by the alibi witnesses. We fail to understand his argument as that is precisely the purpose of calling a rebuttal witness. Furthermore, the purpose of witness McDonald's testimony was useless and totally unnecessary from the State's standpoint unless and until Defendant offered the false alibi testimony. It was not evidence the State could have presented on its case in chief and would not have been pertinent to the cause except in rebuttal to the testimony of Michael and Tuttle. The defendant has, therefore, not sufficiently shown that the trial court abused its discretion in permitting such testimony.

Finding no error, we affirm the trial court.

GIVAN, C.J., and HUNTER, J., concur.

DeBRULER, J., dissents with separate opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

Appellant Arnold Mauricio pursuant to the alibi statute filed his notice of alibi, and in obedience to a pre-trial discovery procured by the prosecution from the trial court provided the prosecution with the names of his alibi witnesses. After the alibi notice was filed, the prosecution responded on July 20, 1982, to a motion of appellant Arnold Mauricio for a formal written discovery response, by filing a witness list which did not include its alibi rebuttal witness Sharon McDonald. When defense counsel for Arnold Mauricio on the basis of that omission objected to her testimony, moved to strike it, and requested a mistrial, the trial prosecutor stated on the record in response that his "first conversation with her [Sharon McDonald] was on June 29th at 7:00 P.M...." and that "I took the position when I responded [on July 20] in writing, they have no right to know my rebuttal witnesses." Her omission from the list and the failure to disclose her before she was called to the witness stand were obviously intentional, and done in the

belief that there was no legal requirement upon the prosecution to divulge her intended use as a witness. In this the prosecution was wrong.

In *Wardius v. Oregon* (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, the U.S. Supreme Court held that the Due Process Clause requires that in a criminal case, the accused be afforded full reciprocal discovery rights when it said: "`.. we .. hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." Here, the prosecution did not inform appellant that it intended to use Sharon McDonald as a witness to refute the alibi defense, after it had procured through discovery the names of the witnesses the defense intended to use to support the alibi defense. The plan to use Sharon McDonald was formed two days after appellant filed his notice of alibi when the trial prosecutor first spoke with her by telephone, and commenced plans to bring her to Ft. Wayne from California for the trial which was then set for September. On November 16, 1982, as trial commenced, Sharon McDonald, unknown to the defense, was en route from California to Ft. Wayne under those arrangements. In true "poker game" fashion she was dealt to the defense as a rebuttal witness on November 19, 1982. This maneuver of the prosecution denied reciprocal discovery rights to appellant. Knowledge of the prosecution's plan would have aided appellant in designing his defense, and that impingement could not be remedied by a continuance. This maneuver of the prosecution warrants a new trial for appellant Arnold Mauricio.

The grant of a new trial here is not foreclosed by our prior cases which have held that rebuttal witnesses need not have been disclosed by the prosecution, even in the alibi situation. *Chatman v. State* (1975), 263 Ind. 531, 334 N.E.2d 673. *Tillman v. State* (1980) 274 Ind. 39, 408 N.E.2d 1250. *Smith v. State* (1982), Ind., 439 N.E.2d 634, *Reid v. State* (1978) 267 Ind. 555, 372 N.E.2d 1149. In none of those cases was the scope of defense discovery so clearly beneath the level required by due process of law and the reciprocity measure that due process utilizes.

PRENTICE, J., concurs.