# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 15 2016, 8:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Tyrone Goodman
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyrone Goodman, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | April 15, 2016 <br><br> Court of Appeals Case No. 45A05-1510-PC-1568 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br> The Honorable Kathleen A. Sullivan, Magistrate <br><br> Trial Court Cause No. 45G01-1307-PC-11 |

**Bradford, Judge.**

# Case Summary

In 2005, Appellant-Petitioner Tyrone Goodman was sentenced to an aggregate term of seventy-eight years after he pled guilty to Class A felony robbery, Class B felony robbery, Class C felony robbery, and Class C felony forgery. Goodman's sentence was affirmed on direct appeal. Goodman filed a *pro-se* petition for post-conviction relief ("PCR") in July of 2013. On September 18, 2015, the post-conviction court issued an order denying Goodman's petition. Goodman has appealed, arguing that the post-conviction court erroneously found that (1) his guilty plea was made knowingly, intelligently, and voluntarily; (2) the factual basis was sufficient to support his guilty plea relating to the Class B felony robbery charge; and (3) he did not suffer ineffective assistance of trial counsel. We affirm.

# Facts and Procedural History

Our memorandum decision in Goodman's prior direct appeal, which was handed down on August 14, 2006, instructs us as to the underlying facts and procedural history leading to this post-conviction appeal:

> On March 2, 2005, Goodman and an accomplice parked outside the home of eighty-three year old Mary Dreiser in Hobart, Indiana. When Dreiser returned home, Goodman's accomplice approached her and asked for directions. As Dreiser began to respond, Goodman's accomplice grabbed her purse and knocked her to the ground. Dreiser sustained a hip injury from the fall and had to have hip replacement surgery.

On March 5, 2005, Goodman went to Merrillville, Indiana, where he encountered Bonnie Armstrong. Goodman approached Armstrong and took her purse. In doing so, Goodman pushed Armstrong against a rail, causing bruising and soreness to her arm.

Later that same day, Goodman went to a Linens N' Things store in Highland, Indiana. Carmen Milojkovitch was inside the store returning an item she had purchased. Milojkovitch's eleven-year old daughter remained outside in the car with Milojkovitch's purse. When Milojkovitch exited the store, she saw Goodman reach inside her car and take her purse. Milojkovitch ran up to Goodman and grabbed the strap of her purse. The two struggled for a few moments until the purse strap broke. Milojkovitch fell to the ground, and Goodman fled with the purse. Inside Milojkovitch's purse was her checkbook. On March 9, 2005, Goodman forged Milojkovitch's signature on one of the checks and made the check payable to himself in the amount of $361.32. Goodman then went to a Bank of Calumet branch and unsuccessfully attempted to cash the check.

Goodman was ultimately arrested. The State charged him with a number of offenses under four different cause numbers. For the events involving Dreiser, Goodman was charged with robbery as a Class A felony, and aggravated battery as a Class B felony under cause number 45G01-0503-FA-00010 ("FA-10"). Goodman was charged under cause number 45G01-0503-FB-00022 ("FB-22") with robbery as a Class B felony for the robbery of Armstrong and robbery as a Class C felony for the events involving Milojkovitch. Goodman was charged with robbery resulting in serious bodily injury as a Class B felony under cause number 45G01-0503-FB-00023 ("FB-23"). Goodman was also charged with forgery as a Class C felony and fraud on a financial institution as a Class C felony under cause number 45G01-0503-FC-00041 ("FC-41") for his attempt to forge Milojkovitch's name and cash one of her checks. Additionally, the State filed an habitual offender charge under each of the four cause numbers.

On August 30, 2005, Goodman entered into a plea agreement with [Appellee-Respondent the State of Indiana (the "State")]. Under the agreement, Goodman agreed to plead guilty to robbery as a Class A felony under FA-10, robbery as a Class B felony and robbery as a Class C felony under FB-22, and forgery as a Class C felony under FC-41. In exchange, the State dismissed the aggravated battery as a Class B felony charge under FA-10, all of the charges under FB-23, the fraud on a financial institution as a Class C felony charge under FC-41, and all four of the habitual offender charges.

The trial court held a sentencing hearing on September 27, 2005, where it accepted Goodman's guilty plea. At the hearing, Goodman apologized to his victims and stated that he was under the influence of drugs at the time he committed each of the acts to which he pled guilty. The trial court found two aggravating circumstances. First was Goodman's criminal history, which includes four juvenile adjudications, nine adult felony convictions, and one misdemeanor conviction. The second aggravating circumstance was that one of Goodman's victims was an eighty-three year old woman who suffered a fractured hip. The only mitigating factor found by the trial court was Goodman's guilty plea, but the court did not give this factor significant weight because of Goodman's criminal history. The trial court specifically refused to find that Goodman's addiction to drugs was a mitigating circumstance. The court sentenced Goodman to forty-eight years for his Class A felony robbery conviction, seventeen years for his Class B felony robbery conviction, seven years for his Class C felony robbery conviction, and six years for his Class C felony forgery conviction. These sentences were to be served consecutively for an aggregate sentence of seventy-eight years. The trial court stated that it did not give Goodman the maximum sentence for any of his convictions because he pled guilty.

*Goodman v. State*, 45A03-0510-CR-525 *2-3 (Ind. Ct. App. August 14, 2006) (footnotes omitted), *trans. denied*. Goodman's sentence was affirmed on direct appeal. *Id*. at *14.

[3] Goodman filed a *pro-se* PCR petition on July 8, 2013. The post-conviction court subsequently conducted an evidentiary hearing on Goodman's petition, after which it issued an order denying Goodman's petition. This appeal follows.

# Discussion and Decision

[4] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[5] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads

unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

## I. Whether Goodman's Guilty Plea Was Made Knowingly, Intelligently, and Voluntarily

[6] Goodman challenges the post-conviction court's determination that his guilty plea was made knowingly, intelligently, and voluntarily. Specifically, Goodman contends that his guilty plea was rendered involuntary because there is no record that he was advised of certain constitutional rights as is required by *Boykin v. Alabama*, 395 U.S. 238 (1969). Goodman also raises two alternative contentions relating to the voluntary nature of his guilty plea, with these contentions being that his guilty plea was rendered involuntary (1) because of his erroneous belief that in light of his decision to plead guilty, the level of felony of one of the charges would be reduced; and (2) because the State allegedly attempted to increase his culpability with regard to one of the other charges.

# A. *Boykin* Rights

"In *Boykin*, the United States Supreme Court held that it was reversible error for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006) (citing *Boykin*, 395 U.S. at 242). "More particularly, *Boykin* requires that the record must show, or there must be an allegation and evidence which show, that the defendant was informed of, and waived, three specific federal constitutional rights: the privilege against compulsory self-incrimination, right to trial by jury, and the right to confront one's accusers." *Id.* (citing *Boykin*, 395 U.S. 243). The *Boykin* Court made it clear that "'[w]e cannot presume a waiver of these three important federal rights from a silent record.'" *Id.* (quoting *Boykin*, 395 U.S. 243).

> However, *Boykin* "does not require that the record of the guilty plea proceeding show that the accused was formally advised that entry of his guilty plea waives certain constitutional rights[,]" nor does *Boykin* require that the record contain a formal waiver of these rights by the accused. *State v. Eiland*, 707 N.E.2d 314, 318 (Ind. Ct. App. 1999) (quotation omitted), *reh'g denied, opinion expressly adopted by* 723 N.E.2d 863 (Ind. 2000); *Barron v. State*, 164 Ind. App. 638, 330 N.E.2d 141, 144 (1975). Rather, *Boykin* only requires a conviction to be vacated if the defendant did not know or was not advised at the time of his plea that he was waiving his *Boykin* rights. *Davis v. State*, 675 N.E.2d 1097, 1103 (Ind. 1996); *see also United States ex rel. Miller v. McGinnis*, 774 F.2d 819, 824 (7th Cir. 1985) (holding that a defendant must be "fully cognizant" that he is waiving his *Boykin* rights by pleading guilty).

*Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001). Further, "[a] signed plea agreement reciting that the defendant waives the right to a jury trial, the right to confront witnesses and the right against self-incrimination, is an adequate advisement to establish a knowing and voluntary waiver of rights." *Spencer v. State*, 634 N.E.2d 500, 501 (Ind. Ct. App. 1993) (citing *Von Hagel v. State*, 568 N.E.2d 549, 550 (Ind. Ct. App. 1990), *trans. denied*). "The trial judge is not required personally to advise the defendant of the constitutional rights he is waiving if those rights are recited in the plea agreement." *Id.* (citing *Moriarty v. State*, 490 N.E.2d 1106, 1108 (Ind. 1986)).

[8] In the instant matter, the plea agreement that was signed by Goodman and accepted by the trial court recited the constitutional rights which must be included in a proper *Boykin* advisement. Review of the record demonstrates that Goodman indicated during the guilty plea hearing that he (1) had reviewed the entire plea agreement before signing it, (2) understood its terms and conditions, (3) had reviewed its terms with his attorney, and (4) fully understood all of his constitutional rights. The trial court also asked Goodman directly whether he understood that he was giving up his constitutional right to be tried by a jury and the related constitutional rights by pleading guilty. Goodman responded that he understood. Additionally, during the evidentiary hearing, Goodman admitted that he signed the plea agreement and was present in court when the trial court went over its terms.

[9] It is clear from the record that Goodman knew he was waiving the constitutional rights discussed in *Boykin*. Review of Goodman's plea agreement

demonstrates that the plea agreement specifically indicated that by pleading guilty, Goodman was waiving the constitutional rights specified by the United States Supreme Court in *Boykin*. Goodman has also acknowledged that he signed the plea agreement and that he understood its terms. Thus, despite Goodman's claim to the contrary, we conclude that Goodman was, in fact, adequately notified of his *Boykins* rights. Goodman's contention that the alleged failure to notify him of his *Boykin* rights rendered his guilty plea involuntary is therefore without merit.

## B. Additional Contentions

[10] Goodman also contends that his guilty plea was rendered involuntary because (1) he erroneously believed that the Class B felony charge would be reduced to a Class C felony and (2) the State allegedly attempted to increase his culpability with regard to the Class A felony robbery charge. Goodman, however, did not raise either of these contentions in his PCR petition. As such, these contentions are unavailable for appellate review. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) (providing that "[i]ssues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal"); *see also* Ind. Post-Conviction Rule 1(8) (providing that "[a]ll grounds for relief available to a petitioner under this rule must be raised in his original petition.").

[11] Furthermore, to the extent that Goodman presented argument relating to these contentions during the evidentiary hearing, the post-conviction court was in the

best position to judge Goodman's credibility with regard to his claimed belief that the Class B felony charge would be reduced to a Class C felony. Nothing in the record provides any indication that the charge would be reduced to a Class C felony and the trial court explicitly explained the potential sentence that could be imposed following Goodman's plea of guilty to the Class B felony. The post-conviction court was also in the best position to judge whether the State presented any argument which was inconsistent with the factual basis outlining Goodman's participation in the criminal acts relating to the Class A felony robbery charge. We will not disturb the post-conviction court's determinations relating to the weight of the evidence or witness credibility. *See Fisher*, 810 N.E.2d at 679 (providing that the post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses).

## II. Whether There Was a Sufficient Factual Basis to Support Goodman's Guilty Plea for Class C felony Robbery

[12] Goodman also contends that there was an insufficient factual basis to support his guilty plea for Class C felony robbery. Specifically, Goodman claims that the factual basis was insufficient to show that he used force when committing the Class C felony robbery.

> A court may not accept a guilty plea unless the court determines that a sufficient factual basis exists to support the plea. *Rhoades v. State*, 675 N.E.2d 698, 700 (Ind. 1996) (citing Ind. Code § 35-35-1-3). A factual basis may be established by relatively minimal evidence about the elements of the crime from which the court

could reasonably conclude that the defendant is guilty. *Id.* A trial court's finding of an adequate factual basis is presumptively correct. *Id.* Additionally, the standard for a sufficient factual basis to support a guilty plea is less rigorous than that required to support a conviction. *Id.* at 702.

*Graham v. State*, 941 N.E.2d 1091, 1098 (Ind. Ct. App. 2011).

[13] In order to find that Goodman had committed Class C felony robbery at the time he committed the criminal offense at issue, the factual basis needed to establish that Goodman "knowingly or intentionally [took] property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear[.]" Indiana Code § 35-42-5-1. "It is true that committing robbery by use of force requires that the force be used before the defendant completes taking the property from the presence of the victim." *Young v. State*, 725 N.E.2d 78, 80 (Ind. 2000) (citing *Eckelberry v. State*, 497 N.E.2d 233, 234 (Ind. 1986)). However,

> "[w]e have previously held ... that a [robbery by use of force] is not fully effectuated if the person in lawful possession of the property resists before the thief has removed the property from the premises or from the person's presence." [*Coleman v. State*, 653 N.E.2d 481, 482 (Ind. 1995)] (emphasis added) (citing *Eckelberry*, 497 N.E.2d at 234 ("The evidence showed the force was used before Eckelberry completed taking the automobile 'from the presence of' Mrs. Bohannan.")). The statute provides that the property must be taken from "another person or from the presence of another person." Ind. Code [ ] § 35-42-5-1 [ ]. A defendant may exert force off the victim's land and still exert the force in the victim's presence. Many robberies occur in places

never owned by the victim, like parking lots.

> "A crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction." *Eddy v. State*, 496 N.E.2d 24, 28 (Ind. 1986). A robbery is not complete until the defendant asports the property, or takes it from the possession of the victim. *Id*. (upholding felony murder conviction where defendant killed victim after removing property from victim's pockets, but prior to taking property away with him); *Neal v. State*, 214 Ind. 328, 14 N.E.2d 590, 596 (1938) (defining asportation). Asportation continues as the perpetrators depart from the place where the property was seized. *See Coleman*, 653 N.E.2d at 482; *Eddy*, 496 N.E.2d at 28. In short, when the robbery and the violence are so closely connected in point of time, place, and continuity of action, they constitute one continuous scheme or transaction. *Thompson v. State*, 441 N.E.2d 192 (Ind. 1982); *Stroud v. State*, 272 Ind. 12, 395 N.E.2d 770 (1979).

*Id*. at 81 (second set of brackets in original, all others added).

[14]   The Indiana Supreme Court held such was the case in *Young*. *Id*. In that case, Young entered the home of Betty and Earl Morris on March 29, 1998. *Id*. at 80. While in the Morris' home, Young asked them if they would be interested in buying food stamps. *Id*. After they declined, Young asked Earl "if he had change for a $50 bill, and held up a bill with the number 50 on it." *Id*.

> As Morris was taking out his billfold, he began to think the money was fake, and said he would not make change. Young shoved Morris back against the door and grabbed the billfold. He then ran out to his car, which was in the alley with the engine running.

> Morris pursued Young and arrived at the car in time to grab onto the windshield and the door handle. He reached into the open window to turn off the ignition. Young rapped his knuckles with a screwdriver and drove down the alley, but Morris continued to hang onto the car. Morris said he couldn't let go, because Young was going too fast. The friction from the pavement of the alley wore through Morris's shoe, and he fell off. Young ran over Morris's leg as he sped away.
>
> Morris sustained a fractured ankle and abrasions and bruises on his arms and legs. He went to the emergency room for treatment a day or two after he was injured. Morris reports that his leg is still stiff and, as a result, he freezes up and falls down a lot, trying to walk.

*Id.* (internal record quotations and brackets omitted). Young challenged his conviction arguing that the evidence was insufficient to prove that he took property from Earl by using force. Upon review, the Indiana Supreme Court disagreed and held that "[t]he snatching of money, exertion of force, and escape were so closely connected in time (to sprint from house to running car parked outside), place (from door to alley), and continuity (in stealing money, then attempting to escape with it), that we hold Young's taking of property includes his actions in effecting his escape." *Id.* at 81.

[15] Such is also the case here. The factual basis demonstrates that on March 5, 2005, Goodman approached a van parked in a parking lot outside of a Linen N' Things store in Highland. The van belonged to Milojkovitch. Goodman approached the van, reached inside, and took a purse belonging to Milojkovitch. Milojkovitch had not given Goodman permission to either

approach her van or take her purse. Milojkovitch approached as Goodman reached into her van and took her purse. Milojkovitch and Goodman engaged in a struggle over the purse when Milojkovitch attempted to take it back from Goodman. During the struggle, Goodman "forcefully snatched the purse causing the strap to break" and Milojkovitch to be knocked to the ground. Guilty Plea Tr. p. 28. Goodman then fled with Milojkovitch's purse. In setting forth the factual basis during the guilty plea hearing, Goodman admitted that he knowingly and intentionally took the purse from Milojkovitch "by use of force in snatching the purse." Guilty Plea Tr. p. 29. Goodman also admitted that by doing so, "it was [his] intent to deprive [Milojkovitch] of any use or value of the purse." Guilty Plea Tr. p. 29.

[16] The factual basis demonstrates that the force exerted by Goodman was exerted as Goodman attempted to depart from the place from which Milojkovitch's purse was seized, *i.e.*, her vehicle. Similar to the facts presented in *Young*, Goodman's snatching of the purse, exertion of force, and escape were so closely connected in time, place, and continuity that we conclude Goodman's taking of Milojkovitch's purse includes his actions effecting his escape. *See Young*, 725 N.E.2d at 81 (providing that Young's snatching of money, exertion of force, and escape were so connected in time, place, and continuity that Young's taking of property included his actions in effecting his escape). We further conclude, therefore, that the factual basis was sufficient to support Goodman's guilty plea for Class C felony robbery.

# III. Whether Goodman Suffered Ineffective Assistance of Trial Counsel

[17]   The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The United States Supreme Court has held that the two-part test set forth in *Strickland* applies to challenges to guilty pleas based on alleged ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

[18]   A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer

to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*.

[19] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*. A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[20] In contending that his trial counsel rendered ineffective assistance, Goodman claims that his trial counsel misinformed him of the law and failed to investigate his case. Goodman, however, presented no evidence beyond his own self-serving testimony at the evidentiary hearing to support these claims.

[21] With respect to his claim that trial counsel incorrectly advised him as to the law, the Indiana Supreme Court has held that "a petitioner may not simply allege that he or she would not have entered into a guilty plea, nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice." *Clarke v. State*, 974 N.E.2d 562, 565 (Ind. Ct. App. 2012).

Rather, the petitioner must "establish, by objective facts, circumstances that support the conclusion that [trial] counsel's errors in advice as to penal consequences were material to the decision to plead." *Segura v. State*, [749 N.E.2d 496, 507 (Ind. 2001)]. In so doing, the petitioner "must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea." *Id.* In undertaking this analysis, we focus upon whether the petitioner proffered specific facts indicating that a reasonable defendant would have rejected the petitioner's plea had the petitioner's trial counsel performed adequately. *See Willoughby v. State*, [792 N.E.2d 560, 564 (Ind. Ct. App. 2003), *trans. denied*].

*Id.* (first set of brackets in original, all others added).

[22] It is also of note that Goodman did not call his trial counsel to testify during the evidentiary hearing regarding either the legal information she shared with Goodman or her investigation into the facts and circumstances relating to the charges levied against Goodman. "When trial counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that trial counsel would not have corroborated the petitioner's allegations." *Gann v. State*, 570 N.E.2d 976, 979 (Ind. Ct. App. 1991) (citing *Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989)). The post-conviction court, therefore, was under no obligation to credit Goodman's self-serving testimony regarding the assistance allegedly rendered by his trial counsel.

[23] Further, review of the record reveals that Goodman failed to establish that he was prejudiced by trial counsel's actions. Goodman was facing numerous felony charges under four separate cause numbers. Goodman was also alleged

to be a habitual offender in each of the separate cause numbers. All told, Goodman faced a maximum 194-year sentence if found guilty of each of the charged offenses and found to be a habitual offender. Pursuant to the terms of the plea agreement, the State agreed to dismiss a number of felony charges and all four allegations that Goodman was a habitual offender. The dismissal of these charges and the habitual offender allegations resulted in a significant reduction in the potential sentencing exposure faced by Goodman.

[24] In discussing the terms of the plea agreement with Goodman during the guilty plea hearing, the trial court went through Goodman's potential sentencing exposure as a result of his guilty plea in great detail. Goodman repeatedly indicated that he understood his potential exposure and that he wished to plead guilty pursuant to the terms of the plea agreement. The trial court subsequently accepted Goodman's guilty pleas and sentenced him in accordance with the terms of the plea agreement. Based on these facts, we conclude that Goodman failed to demonstrate that there was "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Reed*, 866 N.E.2d at 769. As such, we conclude that the post-conviction court did not err in rejecting Goodman's contention that he suffered ineffective assistance of trial counsel.[1]

---

[1] To the extent that Goodman claims that his trial counsel provided ineffective assistance by "effectively arguing for consecutive sentences[,]" Appellant's Br. p. 9, and failing to argue that his drug use should be

# Conclusion

In sum, we conclude that the record demonstrates that Goodman's guilty plea was made knowingly, intelligently, and voluntarily. We also conclude that the factual basis was sufficient to support Goodman's guilty plea for Class C felony robbery and that Goodman did not suffer ineffective assistance of trial counsel. As such, we affirm the judgment of the post-conviction court.

The judgment of the post-conviction court is affirmed.

Bailey, J., and Altice, J., concur.

---

considered to be a mitigating factor, the record demonstrates otherwise. Review of the record reveals that Goodman's trial counsel did not argue for consecutive sentences but rather merely acknowledge that the trial court would likely feel compelled to consider the serious nature of Goodman's conduct together with his extensive criminal record and would likely order that the sentences imposed for each of Goodman's convictions be run consecutively to the others. Despite making this acknowledgment, however, trial counsel nevertheless requested that the trial court order that the sentences be run concurrently and that the trial court consider Goodman's drug habit to be a mitigating factor. It is beyond trial counsel's control that the trial court did not grant these requests when sentencing Goodman.