## SHINN v. THE STATE.

CRIMINAL LAW.—*Robbery.*—*Constructive Violence.*—Though the distinguishing feature of robbery is violence, yet robbery may be committed without

actual violence, as by exciting fear in the person robbed, which, in law, constitutes constructive violence.

SAME.—The violence necessary to constitute robbery must be more than a sudden taking or snatching of the property, and must precede or accompany the taking.

SAME.—*Fraud.—Trick.*—The fraudulent and felonious taking of property by means of a trick or contrivance, but unaccompanied by violence, does not constitute robbery.

From the Madison Circuit Court.

*J. W. Sansberry,* for appellant.

*T. W. Woollen,* Attorney General, for the State.

NIBLACK, J.—The prosecution in this case was upon an indictment containing two counts.

The first count charged, that Robert Shinn and another person, whose name was to the grand jury unknown, " on the 15th day of August, A. D. 1878, at," etc., " did then and there unlawfully, forcibly and feloniously, take from the person of Ithamar McCarty, by violence, three ten-dollar National bank bills, of the value of ten dollars each, and of the aggregate value of thirty dollars, upon a National bank and National banks to the said grand jury unknown, of the personal property, goods and moneys of Jasper N. McCarty."

The second count charged the same persons with stealing, taking and carrying away three ten-dollar National bank bills, describing such bills in the same manner as in the first count.

Shinn, the appellant, plead not guilty, and, upon a trial by a jury, was found guilty of the robbery charged in the first count of the indictment. His punishment was fixed at a fine of one dollar and at imprisonment in the state-prison for two years.

Disregarding a motion for a new trial, the court rendered a judgment of conviction upon the verdict.

One of the causes assigned for a new trial was the insufficiency of the evidence to sustain the verdict, and that

constitutes the principal question to which our attention has been invited here.

Ithamar McCarty was the prosecuting witness, and the only witness as to most of the material facts relied on by the prosecuting attorney for a conviction.

He testified, that, late in the evening of August 14th, 1878, he went from Hancock county to the city of Anderson, in the county of Madison, to sell some flax seed for his brother, Jasper N. McCarty; that he received a check for thirty-five dollars and eighty-eight cents, the value of the flax seed, upon a bank of that city; that next morning, after he had received the money on the check, he sat down on the step at a store door, to look over the money and to see that it was all right; that, while so engaged, a man came up in front of him and engaged him in conversation; that this man, who was the person designated in the indictment as the person unknown to the grand jury, and who was referred to upon the trial as the "padlock man," made some inquiry as to his (witness') future business intentions, saying that he had for sale a very remarkable padlock, denominated a burglar-proof padlock, or something of that kind, and suggesting that he, said McCarty, should become an agent for the sale of this padlock; that this unknown man, after some further conversation, left witness to get a specimen lock for his examination and further information; that, after an apparent second effort to find a lock, the padlock man came to witness at an appointed place with a lock; that thereupon he and witness went walking together upon one of the streets, during which time he explained to witness how to unlock this specimen lock, claiming that no person not previously instructed could unlock it; that they soon came to the door of a church, where they sat down upon the step in the shade, and continued the discussion of the merits of the lock; that, soon after they were thus seated, the appellant,

who was a stranger to witness, came up in front of them and inquired when the train left for Rushville, remarking that his father, who lived in Marion, in Grant county, had had two horses stolen, and that he was in pursuit of the horses; that the padlock man then handed the lock to the appellant, with a remark, that, if his father had had such a lock on his barn as that, his horses would not have been stolen; that the appellant, taking the key, made a seeming effort to unlock the lock, but, failing, said the lock was a sham; that, being assured by the padlock man that it was a very easy thing to do if he only understood its workings, the appellant made another apparent effort to unlock the lock, but, again failing, he handed the lock back, saying he would bet fifty dollars there was not a man in the State who could unlock that lock; that witness pulled out of his pocket three ten-dollar National bank bills, and holding them in his hands, remarked, that, if he were a betting man, he would bet that amount that he could unlock the lock very easily; that at that point witness became suspicious that the padlock man was too anxious for him to bet, and was about to return these bills to his pocket, when the padlock man snatched them from his hand and handed them over to the appellant, who started off on a run; that the padlock man then took witness by the arms and shoved him over the steps in front of the church; that witness, getting loose, ran after appellant, and caught him by the arm and demanded a return of the money; that the padlock man again caught hold of witness, about which time the appellant handed back to witness a ten-dollar bill, requesting him to accept it as a compromise; that witness still hung on to appellant, insisting on a return of the remaining twenty dollars, when another tussle ensued, in which all three engaged, but, the attention of others being attracted by this time, the padlock man very suddenly disappeared from the city, and the appellant was soon afterward arrested.

This we regard as a fair synopsis of so much of the testimony of the prosecuting witness, as is necessary to indicate the character of the transaction for which the appellant was convicted, as above set forth.

The synopsis above given embraces the substantial portions of the testimony which went most strongly against the appellant.

It is said, that the principle of robbery is violence, but it has been held that actual violence is not the only means by which a robbery may be effected; that it may also be accomplished by fear, which the law considers as constructive violence. *Donnally's Case,* 1 Leach, 229; *Long v. The State,* 12 Ga. 293.

With respect to the degree of actual violence necessary to constitute a robbery, more than a sudden taking or snatching must be shown.

Archbold's Treatise on Criminal Practice and Pleading gives several illustrations in support of this rule, and concludes: " So that the rule appears to be well established, that no sudden taking or snatching of property from a person unawares is sufficient to constitute robbery, unless some injury be done to the person, or there be some previous struggle for the possession of the property, or some force used in order to obtain it." Vol. 2, p. 1290. See, also, 2 Wharton Criminal Law, sec. 1701.

The taking must not precede the violence or putting in fear. In other words, the violence or putting in fear will not make a precedent taking, effected clandestinely or without either violence or putting in fear, amount to a robbery. 2 Russell Crimes, 108; 2 Archb. Crim. Prac. & Plead. 1289.

Applying the well established rules of law thus enunciated to the cause in hearing, it is manifest that a case of robbery was not made out against the appellant, on the

evidence.    *Brennon* v. *The State*, 25 Ind. 403 ; *Hart* v. *The* *State*, 57 Ind. 102.

The evidence tended to show the fraudulent and felonious obtaining of money from the prosecuting witness by means of a previously arranged trick or contrivance, but did not sustain the charge of robbery contained in the indictment.    *Huber* v. *The State*, 57 Ind. 341.

The judgment is reversed, and the cause remanded for a new trial.    The clerk will give the proper notice for the return of the prisoner.