**Jerry YOUNG, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 49S00–9904–CR–242.

Supreme Court of Indiana.

March 14, 2000.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Jerry Young was convicted of robbery as a class A felony. Ind.Code Ann. § 35–42–5–1 (West 1998). The court imposed the presumptive sentence of thirty years and added thirty years because Young was an habitual offender. In this direct appeal, he challenges:

(1) the sufficiency of the evidence, claiming that the State did not prove that he took property "by using force";

(2) the sufficiency of the evidence, claiming that the State did not prove that the victim sustained serious bodily injury; and

(3) the proportionality of his sentence.

## The Event Itself

On March 29, 1998, Jerry Young entered the home of Betty and Earl Morris. He asked the Morrises if they would be interested in buying food stamps, and they declined. Young then asked Mr. Morris if he had change for a $50 bill, and held up a bill with the number 50 on it. As Morris was taking out his billfold, he began to think the money was fake, and said he would not make change. Young shoved Morris back against the door and grabbed the billfold. He then ran out to his car, which was in the alley with the engine running.

Morris pursued Young and arrived at the car in time to grab onto the windshield and the door handle. He reached into the open window to turn off the ignition. Young rapped his knuckles with a screwdriver and drove down the alley, but Morris continued to hang onto the car. Morris said he couldn't let go, because Young "was going too fast." (R. at 153.) The friction from the pavement of the alley wore through Morris's shoe, and he fell off. Young ran over Morris's leg as he sped away.

Morris sustained a fractured ankle and abrasions and bruises on his arms and legs. He went to the emergency room for treatment a day or two after he was injured. Morris reports that his leg is still stiff and, as a result, he "freeze[s] up and fall[s] down a lot, trying to walk." (R. at 168.)

## I. The Evidence of Force

Young alleges that the seizure of Morris's property was already complete when Young exerted force. Because the absence of force reduces a robbery to theft, see *Eckelberry v. State*, 497 N.E.2d 233 (Ind.1986), Young contends that the evidence merited at most a theft conviction, (see *id.*).

It is true that committing robbery by use of force requires that the force be used before the defendant completes taking the property from the presence of the victim. *Eckelberry*, 497 N.E.2d at 234. In this case, Young snatched Morris's wallet, ran off the Morrises' property, jumped into his car, which he had left running, and attempted to drive off. Thus, by the time Young exerted the force on Morris by striking his hand with a screwdriver, speeding up, and running over Morris's leg, he was off the Morrises' property and attempting to escape. Essentially, Young claims that the force was used to accomplish his escape, not take the property.

We rejected this very claim in *Eckelberry*. Eckelberry stole the victim's car parked outside her house. On his way off her property, he hit her with the car. He escaped, was caught, tried and convicted of robbery by use of force. We affirmed the conviction, holding that the force "not only accompanied the taking of the automobile …, but indeed was necessary to accomplish it." *Id.* at 234.

In the present case, Young succeeded in removing the wallet from the premises and from Morris's presence only by hitting Morris with the screwdriver and driving away over Morris's leg. Had he not done so, Morris would have turned off the ignition of the car, halting Young's escape. "As such, [Young's] use of force was necessary to accomplish the theft … and was thus part of the robbery." *Coleman v. State*, 653 N.E.2d 481, 483 (Ind.1995).

In *Coleman*, the defendant put some film canisters from a store into his pocket and left the building. A manager followed him outside. Seeing the film protruding from the defendant's pocket, the manager asked the defendant whether he had forgotten to pay for anything. The defendant pulled a knife and threatened the manager. He escaped, was caught, tried and convicted of robbery by use of force. We affirmed.

Similarly, in *Cooper v. State*, 656 N.E.2d 888 (Ind.Ct.App.1995), the perpetrator went into the victim's house to try to convince victim to buy items from him. As the defendant was leaving, he slipped a

gun from the victim's back pocket. The victim pursued defendant onto the porch, where they struggled. The struggle continued into the front yard. Defendant escaped, was caught, tried and convicted of robbery by use of force. Again, we affirmed. *Id.* at 890.

Young attempts to distinguish *Eckelberry, Coleman,* and *Cooper* on the basis that the defendants in those cases exerted the force while the defendant remained on the victim's property, whereas Young exerted force once he was off Morris's land. We think this position untenable.

■ "We have previously held … that a [robbery by use of force] is not fully effectuated if the person in lawful possession of the property resists before the thief has removed the property from the premises *or* from the person's presence." *Coleman,* 653 N.E.2d at 482 (emphasis added) (citing *Eckelberry,* 497 N.E.2d at 234 ("The evidence showed the force was used before Eckelberry completed taking the automobile 'from the presence of' Mrs. Bohannan.")). The statute provides that the property must be taken from "another person or from the presence of another person." Ind.Code Ann. § 35–42–5–1 (West 1998). A defendant may exert force off the victim's land and still exert the force in the victim's presence. Many robberies occur in places never owned by the victim, like parking lots.

■ "A crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction." *Eddy v. State,* 496 N.E.2d 24, 28 (Ind.1986). A robbery is not complete until the defendant asports the property, or takes it from the possession of the victim. *Id.* (upholding felony murder conviction where defen-

dant killed victim after removing property from victim's pockets, but prior to taking property away with him); *Neal v. State,* 214 Ind. 328, 14 N.E.2d 590, 596 (1938) (defining asportation). Asportation continues as the perpetrators depart from the place where the property was seized. *See Coleman,* 653 N.E.2d at 482; *Eddy,* 496 N.E.2d at 28. In short, when the robbery and the violence are so closely connected in point of time, place, and continuity of action, they constitute one continuous scheme or transaction. *Thompson v. State,* 441 N.E.2d 192 (Ind.1982); *Stroud v. State,* 272 Ind. 12, 395 N.E.2d 770 (1979).

Such is the case here. The snatching of money, exertion of force, and escape were so closely connected in time (to sprint from house to running car parked outside), place (from door to alley), and continuity (in stealing money, then attempting to escape with it), that we hold Young's taking of property includes his actions in effecting his escape.[1]

## II. Evidence Concerning Serious Bodily Injury

Indiana Code § 35–42–5–1 provides that robbery resulting in bodily injury to anyone other than the defendant is a class B felony, whereas robbery resulting in *serious* bodily injury is a class A felony. Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code Ann. 35–41–1–25 (West 1998). Young argues that Morris did not suffer serious bodily injury, and that his crime was therefore only the class B offense. (Appellant's Br. at 9.) We disagree.

---

1. Young draws our attention to a single case to the contrary, decided in 1878. *Shinn v. State,* 64 Ind. 13 (1878). In that case, two con men engaged their mark in a lengthy setup, then snatched money from his hand and attempted to flee. The victim grabbed the perpetrator who was holding the money, and the three scuffled. While one of the wrong-

doers managed to run off, the other, Shinn, was apparently apprehended. This Court reversed, saying: "The taking must not precede the violence or putting in fear." *Id.* at 17. The *Shinn* opinion is good reading, but we think it has long since been effectively overruled.

■ "Whether bodily injury is 'serious' has been held to be a matter of degree and therefore a question reserved for the factfinder." *Hill v. State,* 592 N.E.2d 1229, 1231 (Ind.1992). Here, a 69–year-old victim suffered a fractured ankle and badly lacerated arms and legs as a result of the robbery. (R. at 162–66.) His ankle was placed in an immobilizing split for almost eight weeks. (R. at 256, 260.) He has residual pain and difficulty walking. (R. at 138, 168.)

This is substantial probative evidence from which the factfinder could reasonably find serious bodily injury beyond a reasonable doubt. *See, e.g., Hill,* 592 N.E.2d at 1231 (victim's leg in splint for five weeks, missing work for four weeks amounted to serious bodily injury); *Hawkins v. State,* 514 N.E.2d 1255, 1256 (Ind.1987) (67–year-old victim's broken arm, significant pain, and residual soreness amounted to serious bodily injury).

### III. Proportionality of Sentence

Finally, Young argues that his sixty-year sentence is unconstitutionally disproportionate to the nature of the offense, in violation of Article I, section 16 of the Indiana Constitution.

■ The Indiana Constitution demands that penalties be proportionate to the nature of the offense. Ind. Const. Art. I, § 16. "Much of the recent case law interpreting Section 16 involves challenges to sentences enhanced according to the habitual offender statute." *Conner v. State,* 626 N.E.2d 803, 806 (Ind.1993) (citations omitted). In analyzing a disproportionality claim concerning an habitual offender enhancement, we inquire into both the nature and gravity of the present crime as well as the nature of the predicate felonies. *Mills v. State,* 512 N.E.2d 846 (Ind.1987); *Taylor v. State,* 511 N.E.2d 1036 (Ind.1987).

■ The present crime is serious in nature. Young used force to escape with the wallet, which resulted in serious bodily injury to an elderly victim. The predicate felonies are similarly weighty. The State

points out that Young has been arrested thirty-eight times, sixteen of which were for felony offenses, and convicted nineteen times, six of which were for felony offenses. (Appellee's Br. at 7 (citing R. at 89).) Relying on the gravity of the present offense and the severity and numerosity of the predicate offenses, we affirm Young's sentence.

### Conclusion

Accordingly, we affirm the conviction and sentence.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.