## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 13 2017, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kazie Sekou Cole,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 13, 2017<br><br>Court of Appeals Case No.<br>71A03-1605-CR-1034<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Jane Woodward<br>Miller, Judge<br><br>Trial Court Cause No.<br>71D01-1512-F3-66 |

**Baker, Judge.**

[1] Kazie Sekou Cole appeals his conviction for Aggravated Battery,[1] a Level 3 Felony, arguing that the evidence is insufficient to support the conviction. Finding the evidence sufficient, we affirm.

## Facts

[2] G.P. and Cole had been friends for about three years and romantically involved for about three months in December 2015. On December 10, 2015, G.P. went to Cole's house. At some point, she left the house to go shopping; when she returned, Cole met her at the door and demanded her cell phone. G.P. refused to give him her phone, and he then shoved G.P. and told her to go into the back bedroom. They began arguing because G.P. refused to give him her phone or the correct password.

[3] While they argued, Cole began choking G.P. with his hands, eventually putting his arm around her neck and choking her until she lost consciousness. When G.P. regained consciousness, Cole still had his arm around her neck. He then proceeded to hit G.P. "pretty good several times . . . in the side of the head." Tr. p. 93. Cole then choked G.P. again. She lost consciousness at least two more times during the altercation.

[4] G.P. awoke on Sunday and retrieved her phone, which Cole had taken from her, and texted her cousin, saying that Cole had beaten her up and she needed

---

[1] Ind. Code § 35-42-2-1.5

to go to the hospital. When G.P.'s family members arrived to take her to the hospital, they observed that she had been badly beaten around her head and seemed disoriented and confused.

[5] Dr. Adam Losch treated G.P. in the emergency room. He noticed that she had bruising around the eyes and neck, swelling of the face and cheeks, bruising behind the ear, a ruptured eardrum, and two broken teeth. X-rays revealed that G.P. had a broken rib, and a C.T. scan revealed that G.P. had suffered from a subdural hemorrhage—internal bleeding between the brain and the skull. Because of her severe injuries, G.P. was admitted to the hospital and stayed for three days.

[6] On December 18, 2015, the State charged Cole with Level 3 felony rape, Level 3 felony aggravated battery, and Level 6 felony criminal confinement. Cole's jury trial began on March 9, 2016. At trial, Dr. Losch testified that "[a]nytime there's bleeding within the skull[,] that can produce basically death . . . . It can lead to death, because anytime there's bleeding within the skull it's an enclosed space, and so that can result in basically massive brain damage." Tr. p. 150. Dr. Losch also testified that if G.P.'s injuries had been left untreated, they could have been life-threatening. *Id.* at 169. Another physician who treated G.P. testified that increased pressure on the brain due to bleeding could cause death. *Id.* at 245.

On March 11, 2016, the jury found Cole guilty of aggravated battery and not guilty of the remaining charges. On April 8, 2016, the trial court sentenced Cole to twelve years imprisonment. Cole now appeals.

## Discussion and Decision

Cole's sole argument on appeal is that the evidence is insufficient to support the conviction. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

To convict Cole of Level 3 felony aggravated battery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally inflicted injury on G.P., which created a substantial risk of death to G.P. I.C. § 35-42-2-1.5. Cole argues that the evidence did not establish that the injuries created a substantial risk of death. In reviewing a claim concerning whether a victim's injuries created a substantial risk of death, we "look to the observable facts including the nature and location of the injury, and the treatment provided." *Oeth v. State*, 775 N.E.2d 696, 702 (Ind. Ct. App. 2002). Medical expert testimony is not required to prove that a victim's injuries created a substantial risk of death. *Wilcher v. State*, 771 N.E.2d 113, 117 (Ind. Ct. App. 2002).

[10]     In this case, the observable facts in evidence reveal that Cole repeatedly and violently struck and choked G.P. She lost consciousness at least three times and had multiple bruises, swelling, a broken rib, a ruptured eardrum, and two broken teeth. She appeared disoriented and confused, and felt dizzy and nauseated. Medical testimony established that G.P. sustained a subdural hemorrhage, or bleeding between her skull and her brain. Because of her injuries, G.P. had to stay in the hospital for three days so that doctors could monitor her brain's condition. Two of G.P.'s treating physicians testified that subdural hemorrhages can cause death; each of those doctors also testified that if G.P. had not received medical treatment, her injuries could have been life-threatening. Tr. Vol. I p. 169, Vol. II p. 247.

[11]     Cole argues, essentially, that because G.P. did not suffer from any external bleeding, did not have to have surgery, and received medical treatment preventing her injuries from becoming life-threatening, the evidence does not support a conclusion that her injuries created a substantial risk of death. We disagree. Taking the latter argument first, we certainly do not require a battery victim to refrain from seeking medical treatment, causing an actual, imminent risk of death, to prove a substantial risk of death. And as for the first two arguments, these amount to requests that we reweigh the evidence, which we may not do. Whether a risk of death is substantial enough to meet the statutory definition is largely a matter of degree "and therefore a question reserved for the factfinder." *Cf. Young v. State*, 725 N.E.2d 78, 82 (Ind. 2000) (explaining that whether a bodily injury is "serious" "has been held to be a matter of degree and

therefore a question reserved for the factfinder"). There is ample evidence in the record supporting the jury's conclusion that G.P.'s injuries caused a substantial risk of death. *See Beanblossom v. State*, 530 N.E.2d 741, 742-43 (Ind. 1988) (holding that a blow to the back of victim's head, causing victim to fall to his knees and leaving victim in a semiconscious state, was sufficient to prove an injury that created a substantial risk of death). In other words, the evidence is sufficient.

[12] The judgment of the trial court is affirmed.

Mathias, J., and Pyle, J., concur.