## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2019, 10:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean C. Mullins
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Allen Michael Orange, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 4, 2019 <br><br> Court of Appeals Case No. 18A-CR-1798 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel L. Cappas, Judge <br><br> Trial Court Cause No. 45G04-1802-MR-1 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Allen Orange was convicted of aggravated battery, a Level 3 felony, and battery by means of a deadly weapon and battery resulting in serious bodily injury, both Level 5 felonies. Orange now appeals his convictions, presenting two issues for our review which we restate as: (1) whether the State sufficiently rebutted his claim of self-defense; and (2) whether there was sufficient evidence to support his conviction of aggravated battery. Concluding the State sufficiently rebutted Orange's claim of self-defense and sufficient evidence supported his conviction of aggravated battery, we affirm.

# Facts and Procedural History

[2] In December 2017, Bernard Breese was living at his home with his two adult children, Melissa and Kevin, both of whom had developmental disorders requiring his care. Breese allowed Orange to move into the residence in exchange for help caring for the children and Orange allowed his friend, Marchon "A.D." Moss to stay at the home for several months as well. Joshua Trigg rented out the basement of the home.

[3] On evening of December 13, Breese returned home from a hospital stay and fell asleep on the couch in the living room. Later that evening, Moss and Orange returned home, smoked synthetic marijuana, and fell asleep in the living room with Moss sharing the couch with Breese and Orange sleeping on the floor.

[4] Around 2:30 am in the morning of December 14, Melissa, who had been sleeping in her bedroom, was awoken by the sound of Moss and Orange arguing. Melissa walked into the living room to see Orange punch Moss in the face. Melissa testified that Orange then "grabbed a knife" and "stabbed [Moss] . . . quite a few times." Transcript, Volume 2 at 130-31. Orange and Moss eventually fell back onto Breese, who until then was still asleep on the couch. Breese testified that he woke up and saw Orange on top of Moss "punching [Moss] in the head or throat." *Id*. at 82. Moss was screaming and crying, saying, "Call an ambulance. Call 911." *Id*. at 132. Breese eventually realized that Orange was wielding a knife and yelled at him, at which point Orange "throws the knife and up and takes off." *Id*. at 82. Orange threw the knife behind the Christmas tree where it was later found by police. Although there is some discrepancy between Melissa's, Breese's, and Orange's testimony, Breese confirmed that during this time, Orange stated that he was stabbing Moss because Moss said he was going to come back and kill everyone.

[5] According to Orange's version of events, he had received a telephone call from Joshua Justus, a mutual friend of his and Moss's, and he woke Moss up to speak to Justus. Moss became angry, stating that he already spoke with Justus, and approached Orange with his fists clenched. Orange punched Moss in the face. Moss then pulled an object Orange believed to be a firearm from behind his back, placed it to Breese's head, and threatened to kill everyone in the home. Orange retreated to the kitchen where he tripped and caught himself on the countertop where he felt a knife which he grabbed to "intimidate" Moss.

*Id*., Vol. 4 at 166. According to Orange, as he turned towards Moss the two collided and the knife stabbed Moss in the abdomen. "[A] tussle ensued with the two chest to chest, moving back towards the living room, Orange with his arms around Moss in an attempt to rid Moss of the perceived firearm, apparently stabbing Moss' back and shoulders in the process." Brief of the Appellant at 7. Orange claims he was able to free the object from Moss's hand, only then realizing it was too light to be a handgun and Moss then ripped the knife from Orange's hand.

[6] Trigg, who had been asleep in the basement, woke up to Moss entering the basement "covered in blood." Tr., Vol. 2 at 147. Moss stated, "[t]his bit**-a** motherf***** just stabbed me." *Id*. at 148. Trigg assumed Moss was referring to Orange and grabbed his BB gun that looked like a rifle and went upstairs to enter the house. As Trigg was running to the front door, the door opened, and Orange ran out yelling, "[Moss] said he was going to kill you guys. He said he was going to kill you guys. He said he was going to kill you guys." *Id*. at 151. Trigg followed Orange for "maybe ten steps[,]" before turning back to the house to call an ambulance. *Id*.

[7] Moss was transported to the emergency room where he was treated by Dr. Reuben Rutland. Dr. Rutland observed that Moss had sustained multiple stab wounds and was in "critical condition[.]" Tr., Vol. 3 at 61. Moss had been stabbed in the neck, chest, and abdomen. The stab wound to Moss's abdomen punctured through his liver and into his lung. Dr. Rutland characterized these wounds as "life threatening" and testified that "[w]ithout treatment, [Moss]

would have died." *Id*. at 86. After an emergency surgery to inflate Moss's collapsed lung and repair Moss's liver, Moss was placed in the hospital's intensive care unit ("ICU").

[8] After a day in the ICU, Moss was moved to the telemetry floor. Moss's condition had improved to the point where his chest tube could be removed but a post-removal x-ray indicated that his lung had re-collapsed "about 10 percent." *Id*. at 63. Moss was treated with oxygen, which normally corrects the condition, but Moss's lung continued to collapse "down to 30 percent." *Id.* Dr. Rutland informed Moss that the chest tube should be reinserted, but Moss refused. Moss died from his injuries before consulting with a thoracic surgeon.

[9] Dr. Zhuo Wang performed Moss's autopsy. The autopsy revealed that Moss suffered three stab wounds. The first was to the back of Moss's right arm, 6.5 inches deep, causing injuries to the skin, soft tissue, and muscle. The second was to the back of Moss's neck and shoulder, 2 inches deep, originating from the rear and penetrating forward. The third wound was to Moss's abdomen, 7.5 inches deep, injuring his abdominal wall, right lower lung, and creating a "through-and-through injury of the liver." *Id*. at 99. Dr. Wang testified that the cause of death was "multiple stab wounds" and emphasized that the wound to Moss's abdomen was "vital." *Id*. at 115.

[10] On December 19, 2017, the State charged Orange with attempted murder, a Level 1 felony; aggravated battery, a Level 3 felony; and battery by means of a deadly weapon and battery resulting in serious bodily injury, both Level 5

felonies. On February 1, 2018, the State amended the information to add a single count of murder.

[11] A jury trial was conducted between April 30 and May 2, 2018, where Orange presented a claim of self-defense. Specifically, Orange argued that he believed Moss was armed with a handgun and intended to kill the occupants of the house. Orange described a series of events in which the initial stab wound to Moss's abdomen was the result of an accidental collision, and the stab wounds to Moss's back were the result of his efforts to rid Moss of the perceived handgun. The jury ultimately rejected Orange's claim of self-defense, finding Orange guilty of aggravated battery, battery by means of a deadly weapon, and battery resulting in serious bodily injury, while finding Orange not guilty of murder and attempted murder. The trial court merged the convictions of battery by means of a deadly weapon and battery resulting in serious bodily injury with the conviction of aggravated battery and entered judgment of conviction only on the aggravated battery count.

[12] On June 21, 2018, the trial court sentenced Orange to thirteen years: nine years to be served in the Indiana Department of Correction, two years to be served in community corrections, and two years to be served on probation. Orange now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

# I. Self-Defense

## A. Standard of Review

When challenging the sufficiency of evidence regarding the State's rebuttal to a claim of self-defense, the standard is identical to that of any other claim of insufficiency. *Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017), *trans. denied*. We consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence. *Id*.

## B. The State Sufficiently Rebutted Orange's Claim of Self-Defense

Indiana Code section 35-41-3-2(c) provides:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.

In order to prevail on a claim of self-defense, Orange was required to show that he (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). Once Orange established these three necessary elements, the State bore the burden of refuting at least one of the three elements beyond a reasonable doubt. *Id.* "The State may meet this burden by rebutting the defense directly, by affirmatively

showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). "A claim of self-defense will also fail if the person uses more force than is reasonably necessary under the circumstances." *Sudberry v. State*, 982 N.E.2d 475, 481 (Ind. Ct. App. 2013) (quotations and citations omitted). Whether the State has met its burden is a question of fact for the jury. *Miller*, 720 N.E.2d at 700.

[16] On appeal, the parties primarily diverge regarding whether Orange had a reasonable fear for his life. A reasonable belief, as used in the Indiana self-defense statute, requires a defendant to have a subjective belief that force was necessary to prevent death or serious bodily injury and that subjective belief must be objectively reasonable under the circumstances. *Littler v. State*, 871 N.E.2d 276, 279 (Ind. 2007).

[17] Orange argues his reasonable belief was based upon the fact that after his initial punch, Moss pulled an object from behind his back, put it to Bernard Breese's head, and threatened to kill everyone in the room. According to Orange, given the dim lighting, Moss's gestures, demeanor, and alleged history with firearms, it was reasonable for him to believe the object was a handgun and Orange therefore retreated to the kitchen and armed himself with a knife. Orange's argument then describes a series of events in which he makes every effort to diffuse the situation, the initial stab wound to Moss's abdomen was the result of an accidental collision in the kitchen, and the stab wounds to Moss's back were the result of his efforts to rid Moss of the perceived handgun.

[18] The evidence most favorable to the verdict, however, shows that Orange was the only combatant to brandish a weapon—Moss did not have a handgun. And the series of events that Orange describes is largely based upon his own testimony, which the jury was at liberty to disregard. *See Harris v. State*, 269 Ind. 672, 674-75, 382 N.E.2d 913, 915 (1978) (noting that although "a jury is to look to the defendant's viewpoint considering facts relevant to self-defense," the jury "is not required to believe the defendant's evidence."). No blood was found in the kitchen where the "accidental" stabbing was alleged to have taken place and Orange was unable to identify the object which he had perceived to be a handgun.

[19] Moreover, even if Orange's version of events is to be believed, the fight ended with Orange standing over Moss repeatedly attempting to stab him. This evidence supports a conclusion that Orange was a mutual combatant and did not withdraw from the fight even after, by his own admission, he had disarmed Moss of a perceived handgun. Alternatively, the evidence supports a conclusion that Orange escalated the fight and used more force than was reasonably necessary. *See Sudberry,* 982 N.E.2d at 481-82. In either event, we view Orange's argument as nothing more than an invitation to reweigh the evidence and infringe upon the province of the jury, which we will not do. We therefore conclude the State presented sufficient evidence to rebut Orange's claim of self-defense.

# II. Sufficiency of the Evidence

## A. Standard of Review

Next, Orange claims there was insufficient evidence to support his conviction of aggravated battery, a Level 3 felony. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, a conviction will be affirmed if any reasonable juror could find a defendant guilty beyond a reasonable doubt when taking all the facts and inferences in favor of the conviction. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

## B. Sufficient Evidence Supported Orange's Conviction

Indiana Code section 35-42-2-1.5 provides, "A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death . . . commits aggravated battery, a Level 3 felony." Orange argues that "none of the injuries inflicted by Orange created a substantial risk of death to Moss, and the State failed to prove [that] element beyond a reasonable doubt." Br. of the Appellant at 17. When considering whether a victim's injuries created a substantial risk of death, we "look to the observable facts, including the nature and location of the injury, and the treatment provided." *Oeth v. State*, 775 N.E.2d 696, 702 (Ind. Ct. App. 2002), *trans. denied*. Medical expert testimony is not required to prove that a victim's injuries created a substantial risk of death. *Wilcher v. State*, 771 N.E.2d 113, 117 (Ind. Ct. App. 2002), *trans. denied*. And a

conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind. 1999).

[22] Here, the State presented evidence that Orange stabbed Moss three times: two wounds penetrated the skin, soft tissue, and underlying muscle, while the third penetrated 7.5 inches deep, injuring his abdominal wall, liver, and right lower lung. Moss arrived at the hospital in "critical condition." Tr., Vol. 3 at 61. Moss's injuries required emergency surgery to inflate his collapsed lung and repair his liver before necessitating a stay in the hospital's ICU. On this evidence a jury could conclude, even without expert medical testimony, that Moss's injuries posed a substantial risk of death. *See Wilcher*, 771 N.E.2d at 117; *Young v. State*, 725 N.E.2d 78, 82 (Ind. 2000) (holding whether a bodily injury is "serious" is a "a matter of degree and therefore a question reserved for the factfinder").

[23] Despite this, Orange argues Moss was not at risk of death once he obtained medical care and that it was Moss's refusal to have the chest tube replaced which ultimately caused his death. Although we acknowledge Dr. Rutland opined Moss was at no risk of death once he received medical treatment, he testified that prior to such treatment, Moss's wounds were "life threatening" and "[w]ithout treatment, [Moss] would have died." Tr., Vol. 3 at 86. Dr. Wang further testified that Moss's cause of death was "multiple stab wounds" and emphasized that the wound to Moss's abdomen was "vital." *Id*. at 115. This too was sufficient evidence for the jury to conclude Moss's injuries posed a substantial risk of death.

Orange next argues the State was required to "prove beyond a reasonable doubt that Orange acted either knowingly or intentionally when inflicting the injury to Moss'[s] torso." Br. of the Appellant at 18. Specifically, Orange alleges that although Melissa and Breese witnessed Orange intentionally striking Moss, neither witnessed the potentially fatal strike to Moss's torso. Therefore, the only explanation of the injury was Orange's testimony that the strike was accidental. As we explained above however, the jury was at liberty to disregard Orange's testimony, *see Harris*, 269 Ind. at 674-75, 382 N.E.2d at 915, and a conviction may be based entirely on circumstantial evidence, *Franklin*, 715 N.E.2d at 1241. Here, we conclude the multiple, deep stab wounds combined with Breese and Melissa's testimony regarding their infliction was sufficient evidence to support Orange's conviction of aggravated battery.

# Conclusion

For the reasons set forth above, we conclude the State sufficiently rebutted Orange's claim of self-defense and sufficient evidence supported his conviction of aggravated battery. Accordingly, we affirm.

Affirmed.

Riley, J., and Kirsch, J., concur.